IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.    1: 17-cv-01654-GPG

(To be supplied by the court)

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO
AUG -7 2017
JEFFREY P. COLWELL
CLERK

SAUNDERS-VELEZ , Plaintiff,

v.

Colorado Department of Corrections (CDOC)
Travis Trani in his official capacity as Director of Prisons, Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden, Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections, Ryan Long in his official capacity as Denver Reception and Diagnostic Center Warden, Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections, Denver Reception and Diagnostic Center (DRDC) and The Colorado Territorial Correctional Facility (CTCF).

## AMENDED PRISONER COMPLAINT

Pursuant to an order issues by Magistrate Judge Gordon P. Gallagher on 7/10/2017 ordering Plaintiff to cure Deficiencies. Plaintiff hereby cure Deficiencies to the best of her ability. Plaintiff advices the Court the Colorado Department of Corrections has failed to provide Plaintiff with an statement of the inmate trust fund account statement or institutional equivalent for the past six months for the prisoner plaintiff hereby request the Court to issues an order requiring the Colorado Department of Correction to provide the court and all parties with a copy of such statement.

### A. PARTIES

1. Plaintiff Elias Alexander Saunders-Velez also know as Lindsay Alexandria Saunders-Velez. With assigned prison identification number of 176407 and mailing address of P.O. Box 1010 Canon City, Colorado 81215-1010

2. Defendant Colorado Department of Corrections (CDOC). Mailing address of 1250 Academy Loop, Colorado Spring, Colorado 80910. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?   **X** Yes    No

3. Defendant Travis Trani in his official capacity as Director of Prisons. Mailing address of 1250 Academy Loop, Colorado Spring, Colorado 80910. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?   **X** Yes    No

4. Defendant Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden. Mailing address of P.O. Box 1010 Canon City, Colorado 81215-1010. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?
   **X** Yes    No

(Rev. 1/30/07)

5. Defendant Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections. Mailing address of 1250 Academy Loop, Colorado Spring, Colorado 80910. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? **X** Yes    No

6. Defendant Ryan Long in his official capacity as Denver Reception and Diagnostic Center Warden. Mailing address of 10900 Smith Road Denver, CO 80239. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?
 **X** Yes    No

7. Defendant Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections. Mailing address of 1250 Academy Loop, Colorado Spring, Colorado 80910. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law? **X** Yes    No

8. Defendant Denver Reception and Diagnostic Center (DRDC) Mailing address of 10900 Smith Road Denver, CO 80239. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?
 **X** Yes    No

9. Defendant The Colorado Territorial Correctional Facility (CTCF). Mailing address of P.O. Box 1010 Canon City, Colorado 81215-1010. At the time the claim(s) alleged in this complaint arose, was this defendant acting under color of state law?
 **X** Yes    No

## B. JURISDICTION

1.   I assert jurisdiction over my civil rights claim(s) pursuant to:

   **X**     28 U.S.C. § 1343 and 42 U.S.C. § 1983 (state prisoners)

## C. NATURE OF THE CASE

### INTRODUCTION

1. Plaintiff Lindsay Saunders-Velez was at all times relevant to this case a transgender female who has stayed with the Colorado Department of Corrections "CDOC", , Denver Reception and Diagnostic Center "DRDC" and The Colorado Territorial Correctional Facility "CTCF".

2. Plaintiff exhausted administrative remedies when CDOC officials did not respond to Plaintiffs initial grievance. SEE Lewis v. Washington, 300 F.3d 829, 833 [7th Cir. 2002] and Powe v. Ennis, 177 F.3d 393, 394 [5th Cir. 1999].

3. Plaintiff Saunders-Velez alleges that officials in two different prisons repeatedly violated her constitutional rights by failing to provide her with treatment for her gender dysphoria.

4. Plaintiff Saunders-Velez alleges that although the CDOC poilcy recognized that gender dysphoria is a serious medical need requiring special medical evaluations and appropriate treatment, the poilcy recognized nevertheless limited treatment to specific inmates, specifically those inmates who had been identified as transgender during their intake screenings, and even then treatment was limited to "'maintenance.'

5. Colorado Department of Corrections (CDOC),Travis Trani in his official capacity as Director of Prisons, Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden, Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections, Ryan Long in his official capacity as Denver Reception and Diagnostic Center Warden, Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections, Denver Reception and Diagnostic Center (DRDC) and The Colorado Territorial Correctional Facility (CTCF) acted with deliberately indifference to plaintiffs gender dysphoria.

6. Plaintiff has exhausted administrative remedies shown by plaintiff filed one grievance at DRDC and one at CTCF and the defendants never responded. See Dave v. Ennis

## Gender Dysphoria

7. Lindsay Alexandria Saunders-Velez suffers from gender dysphoria. Gender dysphoria is a medical condition in which an individual's gender identity and identification differ from the gender assigned at birth. Saunders-Velez alleges medical professionals agree that gender dysphoria is a serious medical condition requiring treatment conforming to the World Professional Association of Transgender Health "WPATH". These standards provide that transgender persons should be assessed individually and given appropriate treatment, which may consist of outward expression of "one's internal sense of gender identity," hormone therapy, and/or sex reassignment surgery, but not psychotropic drugs or counseling alone. If left untreated or if treatment is discontinued, there is a "severe risk" the individual will experience suicidality, the impulse to engage in self-castration and self-harm, clinically significant depression, anxiety, and mental impairment.

8. Plaintiff has been diagnosed with gender dysphoria by Dr. Thor thur the Colorado Division of Youth Corrections now known as the Colorado Division of Youth Services in 2016.

9. Dr. Thor did a mental health evaluation, creation and implementation of a treatment plan and obtained informed consent prior to treatment.

10. Dr. Thor is recognized by WPATH.

11. Plaintiff signed a release of information the allow CDOC and there agents to get records from Dr. Thor.

12. Numerous courts have recognized WPATH as the prevailing standard for treatment of gender dysphoria.

**The Overarching Treatment Goal.** The general goal of psychotherapeutic, endocrine, or surgical therapy for persons with gender identity disorders is lasting personal comfort with the gendered self in order to maximize overall psychological well-being and self-fulfillment.

**The Standards of Care Are Clinical Guidelines.** The SOC are intended to provide flexible directions for the treatment of persons with gender identity disorders. When eligibility requirements are stated they are meant to be minimum requirements. Individual professionals and organized pro-grams may modify them. Clinical departures from these guidelines may come about because of a patient's unique anatomic, social, or psychological situation, an experienced professional's evolv-ing method of handling a common situation, or a research protocol. These departures should be

recognized as such, explained to the patient, and documented both for legal protection and so that the short and long term results can be retrieved to help the field to evolve.

**The Clinical Threshold.** A clinical threshold is passed when concerns, uncertainties, and questions about gender identity persist during a person's development, become so intense as to seem to be the most important aspect of a person's life, or prevent the establishment of a relatively un-conflicted gender identity. The person's struggles are then variously informally referred to as a gender identity problem, gender dysphoria, a gender problem, a gender concern, gender distress, gender conflict, or transsexualism. Such struggles are known to occur from the preschool years to old age and have many alternate forms. These reflect various degrees of personal dissatisfaction with sexual identity, sex and gender demarcating body characteristics, gender roles, gender identity, and the perceptions of others. When dissatisfied individuals meet specified criteria in one of two official nomenclatures - the International Classification of Diseases 10 (ICD-10) or the Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition (DSM-IV) they are formally designated as suffering from a gender identity disorder (GID). Some persons with GID exceed another threshold - they persistently possess a wish for surgical transformation of their bodies.

**Two Primary Populations with Gender Dysphoria Exist - Biological Males and Biological Females.** The sex of a patient always is a significant factor in the management of GID. Clinicians need to separately consider the biologic, social, psychological, and economic dilemmas of each sex. All patients, however, should follow the SOC.

13. Under WPATH standards plaintiff has be evaluated by a person with experience treating gender dysphoria and then provided with care that is acceptable for plaintiff, which includes, counseling, access to commissary items appropriate to plaintiff's gender identity.
14. In recent years courts have consistently found that gender dysphoria presents a serious medical need that may require treatment to comply with the eighth amendment. See Gayton v. Mccoy, 593 F. 3d 620 (7th Cir 2010)
15. CDOC and CTCF has a very strict policy about clothing, grooming, and allow plaintiff to be called "she", "her" "ms", "miss" "Lindsay Alexandria Saunder-Velez". When such restrictions are applied to plaintiff they make her gender dysphoria worst. Plaintiff is not given clothing appropriate for her gender identity.
16. Plaintiff is denied access to bras and other female undergarments.
17. Plaintiff has been threated to be given a write up for wearing make-up.
18. Plaintiff is also intersex.
19. Plaintiff has asked to be called Lindsay Alexandria Saunder-Velez but was denied.
20. Plaintiff has asked to have other offenders and staff member call her using female pronouns but was denied.
21. Plaintiff asked to be allowed to purchase commissary that is consistent with the female gender identity but was denied.
22. Paintiff asked to be issued clothing consistent with the female gender identity but was denied.
23. gender dysphoria is a rare disorder with an approximate incidence between 1 in 11,900 to 45,000 in males and 1 in 30,000 to 100,000 in females.

24. in Konitzer v. Frank, 711 F. Supp. 2d 874 " prison official's denial of plaintiff's request for make-up, women's undergarments and facial hair remover might give rise to an eighth amendment violation."
25. in Soneeya v. Spencer, 851 F. Supp. 2d 228 " prison official's delaying providing female canteen items and clothing necessary for plaintiff gender dysphoria" .
26. Such experiences are psychologically harmful to plaintiff. As a reulst CDOC is violating the eighth amendment by not allowing plaintiff to have gender-appropriate clothing and supplies such as make-up denying request to present consistent with the female gender identity.

### Lindsay's Background

Since childhood, Lindsay has "strongly identified" as female rather than her male gender. After attempting suicide many times and bring a lawsuit against the Colorado Div. of Youth Corrections Lindsay was diagnosed with gender dysphoria. Since then, she has lived and expressed herself as female.. At 17, she began hormone treatments, and that treatment continued for over 2 years. As a result, she has developed female secondary sex characteristics, including full breasts, a feminine shape, soft skin, and ... a reduction in male attributes.

### Actions of CDOC, DRDC and CTCF

27. The conditions for a transgender offender are discriminatory and dangerous at CDOC and CTFC.
28. At DRDC and CTCF plaintiff is called by "he", "his", "Sir", or "mr".
29. Plaintiff is only searched by male staff members even after plaintiff informed CDOC and CTCF that she does not feel safe being searched by male staff members.
30. at DRDC unit 1 "one" pod A and many place around CTCF there is a discrimination statement that states "Any offenders intentional display of the genitals, buttocks, **female breasts or male cheat that resemble breast is strictly prohibited**" emphasis added.
31. Female offender assigned to the sex at birth can not be place in restrictive housing, removed from population or have their phone right taking away.
32. Intersex or transgender females do not get the same treatment as females assigned to the sex at birth.
33. Plaintiff has been called a "tranny" by an officer at CTCF.
34. Many officers at DRDC and CTCF do not know how to handle intersex or transgender offenders they are very disrespectful.
35. Colorado Department of Corrections (CDOC),Travis Trani in his official capacity as Director of Prisons, Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden, Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections, Ryan Long in his official capacity as Denver Reception and Diagnostic Center Warden, Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections, Denver Reception and Diagnostic Center (DRDC) and The Colorado Territorial Correctional Facility (CTCF) have failed to train, supervise and discipline CDOC employees in the proper treatment of transgender female offenders.
36. Colorado Department of Corrections (CDOC),Travis Trani in his official capacity as Director of Prisons, Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden, Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections, Ryan Long in his official capacity as Denver Reception and Diagnostic Center

Warden, Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections, Denver Reception and Diagnostic Center (DRDC) and The Colorado Territorial Correctional Facility (CTCF) and all CDOC employees has treated and continues to treat plaintiff essentially as if she were a male despite knowing that she is and at all time relevant to this case a intersex and transgender female.

37. On 6-29-2017 at CTCF the office of the clerk for the United States District Court Alfred A. Arraj Courthouse post stamped 01 JUN 17 under the name Lindsay A. Saunders, plaintiff got I note stating "per. Major Caley- This legal letter will be allowed this time. In the future you must use your committed name. (Saunders, Elias #176407) any future mail (legal or non-legal) will be returned to the sender if your committed name is not use. CTCF mailroom" dated 6-29-17 SEE EXBHIBT A

### Legal Standard

38. The Eighth Amendment, which is made applicable to the States through the Due Process Clause of the Fourteenth Amendment, "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." When serving a term of imprisonment, "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." In Estelle v. Gamble, the Supreme Court held that prison officials' deliberate indifference to an inmate's serious medical need may constitute a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. In its opinion, the Court further emphasized that, "[t]he Amendment embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency' against which we must evaluate penal measures."

The inquiry into whether prison officials' denial of medical care to an inmate amounts to an Eighth Amendment violation has both an objective and a subjective component. Objectively, "it must be proven that there is a serious medical need and that adequate care has not been provided." Not every ailment qualifies as a serious medical need for Eighth Amendment purposes. Rather, "[a] serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated." In general, a serious medical need is "one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention.'"

Prisoners have a right, under the Eighth Amendment to receive adequate treatment for their serious medical needs. Prisoners must be provided with, "services at a level reasonably commensurate with modern medical science and of a quality acceptable within prudent professional standards." Adequate care is based on an individualized assessment of an inmate's medical needs in light of relevant medical considerations. Courts must evaluate whether the care being provided is minimally adequate, but should defer to the considered judgment of prison officials in choosing between different forms of adequate medical care.

Once it has been established that a prisoner suffers from a serious medical need, it must also be shown that prison officials have acted with 'deliberate indifference' to that need. 112❋ In Whitley v. Albers, the Supreme Court emphasized that:

[i]t is obduracy and wantonness, not inadvertence or error in good faith that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

Deliberate indifference may be manifested in a variety of ways, including by "prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." Other courts have found that "consciously choosing 'an easier and less efficacious' course of treatment plan may constitute deliberate indifference, if the choice was made for non-medical reasons not rooted in a legitimate penological purpose."

As the First Circuit has made clear, the Eighth Amendment standard for what behavior constitutes deliberate indifference "is in part one of subjective intent." Here, as in criminal law, "subjective intent is often inferred from behavior and even in the Eighth Amendment context . . . a deliberate intent to harm is not required . . . . Rather, it [may be] sufficiently evidenced 'by denial, delay, or interference with prescribed health care.'" In Battista v. Clarke, the First Circuit found that there was sufficient evidence to support a finding of deliberate indifference where, "even though it does not rest on any established sinister motive or 'purpose' to do harm," the Department of Corrections' actions reflected a "composite of delays, poor explanations, missteps, changes in position and rigidities - common enough in bureaucratic regimes but here taken to an extreme."

The deliberate indifference inquiry has two parts. First, it must be established that the responsible official is aware of the facts from which he or she could infer that a substantial risk of serious harm exists, and second, the official must also draw that inference. In deciding what type of care to provide, or even in rare circumstances, whether to provide care for a prisoner's medical needs, it is appropriate for prison officials to weigh the "practical constraints imposed by the prison environment." In determining whether the subjective standard of deliberate indifference has been satisfied:

[t]he duty of prison officials to protect the safety of inmates and prison personnel is a factor that may properly be considered in prescribing medical care for a serious medical need. . . . [A] prison official, acting reasonably and in good faith, might perceive an irreconcilable conflict between his duty to protect safety and his duty to provide adequate medical care.

A decision to alter or deny treatment on such grounds might not rise to the level of an Eighth Amendment violation because the infliction of pain on the individual inmate "would not be unnecessary or wanton," in light of the realities of prison administration. Cost of treatment, however, may not be used as a reason to deny an inmate medically necessary care.

A prison official is a proper defendant in an Eighth Amendment suit if that official was "personally involved" in the decision to deny treatment for Plaintiff's serious medical need. Personal involvement may be established, "by showing that the official knew of the prisoner's need for medical care and yet failed to provide the same."

An Eighth Amendment violation may be found based upon the failure of a correctional institution to adapt an established policy in order to adequately address an inmate's serious medical need. The Ninth Circuit held in Allard that denial of treatment for gender dysphoria based on a blanket prison policy, rather than individual need, may constitute deliberate indifference under the Eighth Amendment standard. Similarly, the Seventh Circuit recently upheld a District Court's invalidation of a Wisconsin law that prohibited the use of hormones or sex reassignment surgery as a treatment for inmates suffering from gender identity disorder. There, the Seventh Circuit affirmed the District Court's finding that an Eighth Amendment violation "stemmed from 'removing even the consideration of hormones or surgery,'" as options for GID treatment. In Brooks v. Berg, the District Court for the Northern District of New York also found that a "blanket denial of medical treatment is contrary to a decided body of case law," and that "[p]risons must provide inmates with serious medical needs some treatment based on sound medical judgment." The court continued: "[P]rison officials cannot deny transsexual inmates all medical treatment by referring to a prison policy. . . ." Indeed, another sitting of this court has found that treatment decisions concerning inmates with GID must be based on an individualized judgment made by the inmate's medical providers instead of a broad departmental policy.

Because this case involves only prospective injunctive relief, the court must focus on the state of affairs at the time of trial. "In order to obtain an injunction, the prisoner must prove that the Defendant official was, at the time of trial, 'knowingly and unreasonably disregarding an intolerable risk of harm, and [that he] will continue to do so.'" As the Supreme Court has emphasized, "[i]f the evidence establishes that an inmate faces an objectively intolerable risk of serious injury, the defendants could not plausibly persist in claiming lack of awareness," and the responsible officials are thus required to take action to abate that risk.

In sum, in order to obtain relief on her Eighth Amendment claim in this case, Plaintiff must prove that: "(1) [s]he has a serious medical need; (2) which has not been adequately treated; (3) because of [Commissioner Spencer's] deliberate indifference; and (4) that deliberate indifference is likely to continue in the future."

## D. CAUSE OF ACTION

State concisely every claim that you wish to assert in this action. For each claim, specify the right that allegedly has been violated and state all supporting facts that you consider important, including the date(s) on which the incident(s) occurred, the name(s) of the specific person(s) involved in each claim, and the specific facts that show how each person was involved in each claim. You do not need to cite specific cases to support your claim(s). If additional space is needed to describe any claim or to assert more than three claims, use extra paper to continue that claim or to assert the additional claim(s). The additional pages regarding the cause of action should be labeled "D. CAUSE OF ACTION."

1. Claim One:    Fourth Amendment Violation

    Supporting Facts:

    39. All statement in the complaint support this claim.
    40. Defendants knowingly acted under color of state law.
    41. Plaintiff was subjected to many unconstitutional searches.
    42. Colorado Department of Corrections (CDOC), Travis Trani in his official capacity as Director of Prisons, Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden, Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections, Ryan Long in his official capacity as Denver Reception and Diagnostic Center Warden, Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections, Denver Reception and Diagnostic Center (DRDC) and The Colorado Territorial Correctional Facility (CTCF) and all CDOC employees are liable for these violations.

2. Claim Two: <u>Eighth Amendment Violation</u>

Supporting Facts:
43. All statement in the complaint support this claim.
44. Defendants knowingly acted under color of state law.
45. Plaintiff was subjected to many unconstitutional searches.
46. Colorado Department of Corrections (CDOC),Travis Trani in his official capacity as Director of Prisons, Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden, Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections, Ryan Long in his official capacity as Denver Reception and Diagnostic Center Warden, Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections, Denver Reception and Diagnostic Center (DRDC) and The Colorado Territorial Correctional Facility (CTCF) and all CDOC employees are liable for these violations.
47. Colorado Department of Corrections (CDOC),Travis Trani in his official capacity as Director of Prisons, Mike Romero in his official capacity as Colorado Territorial Correctional Facility Warden, Rick Raemisch in his official capacity as Executive Director of Colorado Department of Corrections, Ryan Long in his official capacity as Denver Reception and Diagnostic Center Warden, Kellie Wasko in her official capacity as Deputy Executive Director of Colorado Department of Corrections, Denver Reception and Diagnostic Center (DRDC) and The Colorado Territorial Correctional Facility (CTCF) and all CDOC employees did know plaintiff had gender dysphoria and acted with deliberately indifference when they failed to remove the risk of serious future harm stemming from gender dysphoria.

3. Claim Three: n/a

## E. PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated? **X** Yes __No (CHECK ONE).

1. Name(s) of defendant(s) in prior lawsuit: **Colorado Div. of youth Corrections (DYC)**
   **Erin Jacobs DYC PVYSC Director**
   **Anders Jacobson DYC Director**

2. Docket number and court name:
   **U.S. District Court for the District of Colorado**

3. Claims raised in prior lawsuit:
   **Transgender issues**
   **Access to Medical Care**
   **Access to local News**

4. Disposition of prior lawsuit (for example, is the prior lawsuit still pending? Was it dismissed?): **Selttlement and Pending ruling from Trial**

5. If the prior lawsuit was dismissed, when was it dismissed and why?

6. Result(s) of any appeal in the prior lawsuit: _____

## F. ADMINISTRATIVE RELIEF

1. Is there a formal grievance procedure at the institution in which you are confined?
   **X** Yes __No (CHECK ONE).

2. Did you exhaust available administrative remedies? **X** Yes __No (CHECK ONE).

## G. REQUEST FOR RELIEF

Plaintiff, pray the Court accepts this prisoner complaint and order all relief allowed by law. Plaintiff request appointment of counsel on the following grounds:
- The nature and complexity of the case
- The potential merit of the claims
- The degree to which the interest of justice including the benfits to the court will be served by such appointment.

Plaintiff request that the Court order the U.S. Marshals services serve each defendant and their agents. Plaintiff reserves the right to amend this Complaint.

## DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Executed In:
Canon City, CO

(Prisoner's Original Signature)
/s/ Lindsay Alexandria Saunders-Velez
Plaintiff
Lindsay Alexandria Saunders-Velez #93810
DOC# 176407
P.O. Box 1010 Canon City, Colorado 81215-1010

Executed on: 8/1/2017

Exhibit A



OFFICE OF THE CLERK
**UNITED STATES DISTRICT COURT**
ALFRED A. ARRAJ COURTHOUSE
901-19TH ST., ROOM A105
DENVER, CO 80294-3589

OFFICIAL BUSINESS

DENVER CO 802
01 JUN '17
PM 7 L

Must use Committed Name - Elias Saunders #176407

Lindsay A. Saunders
~~CTASIFORN ATIO:~~
℅ DRDC
10900 Smith Rd PO Box 392009
Denver Co 80239

CLSF

T/M Saunders, Elias #176407

Per. Major Caley — This legal letter will be allowed this time. In the future you must use your committed name.

(Saunders, Elias #176407)

Any future mail (legal or nonlegal) will be returned to the sender if your committed name is not used.

CTCF mailroom 6-29-17