**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  17-cv-01654-MSK-MJW

SAUNDERS-VELEZ,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS (CDOC),
TRAVIS TRANI, in his official capacity as Director of Prisons,
MIKE ROMERO, in his official capacity as Colorado Territorial Correctional Facility Warden,
RICK RAEMISCH, in his official capacity as Executive Director of Colorado Department of Corrections,
RYAN LONG, in his official capacity as Denver Reception and Diagnostic Center Warden,
KELLIE WASKO, in her official capacity as Deputy Executive Director of Colorado Department of Corrections,
DENVER RECEPTION AND DIAGNOSTIC CENTER (DRDC), and
THE COLORADO TERRITORIAL CORRECTIONAL FACILITY (CTCF),

    Defendants.

_____

**AMENDED EMERGENCY *EX PARTE* REQUEST
FOR TEMPORARY RESTRAINING ORDER**
_____

Comes now, Paula Greisen and Meredith Munro, of King & Greisen, LLP, as counsel for Lindsay Saunders-Velez, and hereby AMENDS the Emergency Temporary Restraining Order Pursuant to Fed. R. Civ. P., Rule 65, filed this morning on April 20, 2018 <u>to add pertinent facts, including additional facts that occurred after the initial filing of this Request</u>, and state as follows:

    1.    During the late morning of April 19, 2018, undersigned counsel was retained to represent Plaintiff in this case.  At that time, counsel was informed that Ms. Saunders-Velez was scheduled to be moved as a result of disciplinary proceedings to the punishment pod of

CellHouse 3 in the Colorado Territorial Correctional Facility ("CTCF") at the Colorado Department of Corrections ("CDOC").

2.      Ms. Saunders-Velez just turned 20 years of age. She has lived as a female since she was 8 years of age. She started hormone replacement therapy at 15.[1] She has been diagnosed by the State of Colorado as having gender dysphoria and continues to be on approved hormone replacement therapy to correct her gender identity to that of a female. From 2014 until 2017, she was housed at the Colorado Division of Youth Services in the female facility.

3.      It is our understanding that Ms. Saunders-Velez was sent to CDOC upon a probation violation in 2017 and is now being held in the male facility at CTCF, despite her previous housing in the female facility at the Colorado Division of Youth Corrections. Physically, Ms. Saunders-Velez appears as a female, and has developed breasts as a normal part of the hormone replacement therapy. Nevertheless, she was placed in the male CDOC facility in May 2017 and thereafter filed this case pro se.

4.      Upon her placement at CTCF, Ms. Saunders-Velez was originally housed in CellHouse 3 for about four months. The cells in CellHouse3 are "wet" cells, which have a toilet in the cell. The cells themselves are open – meaning that the cell doors are made only of bars which allow anyone to see into the cell at any time. The shower facilities are also open and provide no privacy.

5.      During the time Ms. Saunders-Velez was housed in Cellhouses 3, CDOC gave her what it calls a "privacy screen" -- a temporary sheet she could place on the cell bars that

---

1 Undersigned counsel has just been retained and has not yet received any medical records or any of the other records regarding this case. The information presented by undersigned counsel has been provided either from Ms. Saunders-Velez or from her previous counsel.

ostensibly would allow her to use the bathroom in private. However, the male inmates repeatedly tore down these sheets and exposed her while she was attempting to use the restroom facilities. In fact, given the lack of supervision on this unit, male inmates often repeatedly exposed themselves to her, sexually harassed her, and asked and/or demanded sexual favors.

6. After repeated complaints by Ms. Saunders-Velez, CDOC eventually moved her out of CellHouse 3 into CellHouse 7. Although she has a male roommate in her cell, that inmate respects her privacy and she is allowed to shower and use the toilet facilities in private. However, one of the male guards repeatedly grabbed her breasts during pat-down searches.

7. Repeatedly throughout her incarceration in CDOC, Ms. Saunders-Velez has been repeatedly threated with sexual assault and/or the request for sexual favors. In September 2017, she was transferred to Arkansas Valley Correctional facility. At that facility, a gang of male inmates approached her and demanded sex – within a few hours of her arrival at the facility. To escape the sexual assaults, she swallowed razors and was hospitalized. She was thereafter sent to the Centennial facility for treatment, and then returned to CTCF.

8. Upon her return to CTCF, CTCF's refused to acknowledge Ms. Saunders-Velez's status as a female, to allow her privacy, to allow her to obtain goods from the canteen such as female undergarments, including a bra, makeup, and other feminine products. It also refused to address Ms. Saunders-Velez by her female name and to use the appropriate gender pronoun when referring to her, and precluded her from sending legal mail under her female name, until the Court intervened on that issue.

9. In December 2017, Ms. Saunders-Velez was sexually assaulted by a male inmate, as detailed in her Amended Complaint in this case.

10. In the spring of 2018, Ms. Saunders-Velez was accused of kissing a male inmate, a charge she strenuously denies, was convicted, and given 30 days of loss of privileges ("LOP"). She was then informed that she would be transferred to CellHouse 3's punishment pod for this 30-day sentence.

11. The punishment pod in CellHouse 3 has very little supervision by prison staff. Ms. Saunders-Velez has informed CDOC that there are several individuals who are believed to be currently housed in that pod who have threatened her with sexual assault and/or requested sexual favors from her. These individuals are known as "Wet-O," "Angelo," "G-String" and "Wing."

12. On the afternoon of April 19, 2018, undersigned counsel contacted counsel for the CDOC, Chris Alber, regarding the serious safety concerns that existed with placing Ms. Saunders-Velez in the punishment pod at CellHouse 3. Undersigned counsel informed Mr. Alber that this pod was not an appropriate placement for Ms. Saunders-Velez because that location was non-compliant with the requirements of the Prison Rape Elimination Act ("PREA") because it did not sufficiently address her serious privacy and safety concerns. Undersigned counsel requested that Mr. Alber arrange for Ms. Saunders-Velez to have a phone call with undersigned counsel that afternoon, and he stated he would attempt to arrange that call.

13. Undersigned counsel also informed Mr. Alber that if these safety concerns were not addressed, that an emergency request for a temporary restraining order would be requested from the Court.

14. During the call with Mr. Alber, he stated that he would not be in a position to address an emergency request because he was "in trial" and that he could not confer with

undersigned counsel again regarding the matter until Friday afternoon – but suggested that we file a motion and he would respond next week.

15. At approximately 3:00 p.m., Mr. Alber contacted undersigned counsel again and stated that a call had been arranged with Ms. Saunders-Velez and undersigned counsel at 3:30. Mr. Alber also stated that he had spoken with CDOC, that Ms. Saunders-Velez was scheduled to be transferred to CH3 by 10:00 a.m. on April 20, 2018. He further stated that Ms. Saunders-Velez would be given a "privacy screen" while housed in CellHouse3. This is the same "screen" she had been given before that was not effective in securing her privacy.

16. At approximately 3:40 p.m. on April 19, 2018, undersigned counsel had a phone call with Ms. Saunders-Velez. At that time, Ms. Saunders-Velez expressed extreme concern that there are currently four individuals who are housed in the punishment pod that have threatened her with sexual assault and/or asked her for sexual favors. As an officer of the Court, undersigned counsel can also represent that during that call, Ms. Saunders-Velez repeatedly expressed genuine fear that she would be subjected to sexual violence if placed in CellHouse 3, and cried throughout the call. It is apparent to undersigned counsel that Ms. Saunders-Velez is in real fear for her safety and that she is suffering from significant emotional distress as a result of these fears. Because of her history of self-harm, undersigned counsel has serious concerns that if placed in CellHouse 3, her mental health may deteriorate again to the point where she inflicts injury upon herself.

17. After the call with Ms. Saunders-Velez, undersigned counsel sent an email to Mr. Alber again reiterating the serious safety concerns that existed with placing Ms. Saunders-Velez in CellHouse 3, providing him the names of the individuals that had previously threatened her,

and explaining that the "privacy screens" were not sufficient to ensure her safety, as required by the PREA. Undersigned counsel also informed Mr. Alber that by placing Ms. Saunders-Velez in CellHouse 3 under these circumstances, that CDOC was knowingly placing her in a situation where she faced serious risk of bodily harm and extreme emotional distress.

18. When undersigned counsel got a "bounce-back" email saying the email had been received, but contained "errors," she then called Mr. Alber at approximately 6:30 on the evening of April 19, 2017, reiterating these concerns. The message on his phone stated that the call was being forwarded to his cell phone. Although undersigned counsel left her cell phone number asking for Mr. Alber to contact her about the matter, Mr. Alber did not return that call.

19. Undersigned counsel sent the email again to Mr. Alber this morning, April 20, 2018, and it appears to have been received. At 9:30 this morning, undersigned counsel again contacted Ms. Saunders-Velez by phone. At that time, Ms. Saunders-Velez informed undersigned counsel that she had been moved to CellHouse 3 at 7:30 a.m. this morning, was housed in the punishment pod on the second tier in cell B-2, L-4. Ms. Saunders-Velez has not been provided any privacy screen. In any event, as the privacy screens only cover the exterior cell bars, even if she is provided such a screen, it would not provide her any privacy from her cellmate.

20. Ms. Saunders-Velez has informed undersigned counsel that upon her arrival to the pod, she was met by "cat-calls" from several of the male inmates. One male inmate stood in his cell, while asking her to come to him as he groped his genitals. Ms. Saunders-Velez has also learned that at least one of the four individuals who have previously threatened her with sexual assault, "Angelo," is still housed in this pod.

6

21. Undersigned counsel believes that there will be immediate and irreparable injury and damage to Ms. Saunders-Velez if she is not <u>immediately</u> removed from CellHouse3 and placed in a unit that is PREA compliant and ensures her physical and mental safety. Pursuant to this Court's Civil Practice Standards Rule 7.8 and Fed. R. Civ. P., Rule 65, undersigned counsel attaches an Affidavit to this motion regarding these facts.

22. As stated above, undersigned counsel has attempted to contact CDOC counsel on the evening of April 19. Another call was placed to Mr. Alber this morning at approximately 10:00 a.m. and left another voicemail message. According to the information Mr. Alber provided yesterday, he is in trial and not available to deal with this matter in any substantive manner until after the weekend.

23. At 10:00 a.m. this morning, undersigned counsel received a response email from Mr. Alber stating "I received your email this morning. I have forwarded your email on to the facility." No other information was provided regarding what, if any steps, would be taken prior to the weekend.

24. Undersigned counsel has never been given any reason why the move of Ms. Saunders-Velez could not be delayed until the parties have an opportunity to address the matter with this Court. Instead, CDOC went forward with the move and thus necessitating this motion. Undersigned counsel will ensure that any security determined necessary by the Court pursuant to Fed.R.Civ.P. Rule 65(c) shall be provided.

25. <u>Upon information and belief, other male inmates have been allowed to serve sentences resulting from disciplinary actions in their current cells, rather being placed in the punishment pod at CellHouse 3.</u>

26. Specifically, an inmate by the name of Robert Drake is believed to serving a 20-day loss of privileges (LOP) sentence in his housing cell because of security concerns placing him in CellHouse 3.

27. Ms. Saunders-Velez is not asking for a reprieve of her LOP, but simply to be allowed to serve her disciplinary sentence in the same manner that other inmates can do "In Place" in their current housing – because of her significant safety and mental health concerns.

ADDITIONAL FACTS SINCE FILING THE ORIGINAL REQUEST FOR A TRO

28. This afternoon the undersigned spoke with Ms. Saunders-Velez who tearfully described that she has already been assaulted in CellHouse 3. Ms. Saunders-Velez was pulled into another inmate's cell. After she entered this individual's cell, two other men entered the room after her, trapping her in the cell. Ms. Saunders-Velez was asked why she was "so uptight" and told to "relax." The first inmate then pulled down his pants and demanded oral sex from Ms. Saunders-Velez.

29. Ms. Saunders-Velez was terrified. There were no guards present to protect her. If lockdown had not then been announced, Ms. Saunders-Velez would have been physically assaulted against her will.

30. After the assault, Ms. Saunders-Velez was too afraid to inform the prison guards because she fears that she will be retaliated against and placed in solitary confinement in the hole in CellHouse 3. Ms. Saunders-Velez has informed the undersigned that she has a history of harming herself in the hole.

31. Accordingly, we reiterate our move for an Emergency *Ex Parte* Temporary Restraining Order to prohibit CDOC from holding Ms. Saunders-Velez in the punishment pod at

CellHouse 3 <u>and instead, to allow her to complete her disciplinary sentence "In Place" in her current housing in CellHouse 7. We also move for an Order prohibiting CDOC from retaliating against Ms. Saunders-Velez for complaining about her conditions and for filing this Request, including placing her in solitary confinement or the hole</u>.

DATED this 20th day of April, 2018.

Respectfully submitted,

*s/ Paula Greisen*
Paula Greisen
KING & GREISEN, LLP
1670 York Street
Denver, Colorado 80206
(303) 298-9878 telephone
greisen@kinggreisen.com