**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  17-cv-01654-MSK-MJW

SAUNDERS-VELEZ,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS (CDOC),
TRAVIS TRANI, in his official capacity as Director of Prisons,
MIKE ROMERO, in his official capacity as Colorado Territorial Correctional Facility Warden,
RICK RAEMISCH, in his official capacity as Executive Director of Colorado Department of Corrections,
RYAN LONG, in his official capacity as Denver Reception and Diagnostic Center Warden,
KELLIE WASKO, in her official capacity as Deputy Executive Director of Colorado Department of Corrections,
DENVER RECEPTION AND DIAGNOSTIC CENTER (DRDC), and
THE COLORADO TERRITORIAL CORRECTIONAL FACILITY (CTCF),

      Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

---

      Plaintiff Lindsay Saunders-Velez, by and through her attorneys, Paula Greisen and Meredith A. Munro of KING & GREISEN, LLP, hereby file this Response to Defendants' Motion to Dismiss [Doc. 54] (Defs' MTD), and states as follows:

**I.
INTRODUCTION**

      In its second motion to dismiss, Defendants correctly state that the crux of this entire case is that "Plaintiff is being treated as a male rather than the gender Plaintiff identifies with, female."  [Doc. 54] p. 1.  Defendants do not deny the wealth of law that acknowledges the validity of claims based on the Fourth Amendment for non-exigent cross-gender searches, nor do

they deny that the Eighth Amendment requires prisons to provide medically necessary treatment, including to persons who are transgender. Instead, it summarily asserts that the law does not recognize a transgender woman's right to be treated as a female. Defendants' arguments are without merit.

## II.
## ARGUMENT

**A.     Standard of Review.**

In deciding a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the Complaint must be accepted as true and the allegations viewed in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001). A claim is only subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**B.     Well-Pled Factual Allegations Deemed True.**

As the Court is aware, the allegations regarding Ms. Saunders-Velez's Fourth Amendment claim overlaps with those for her Eighth Amendment claim as both involve the physical searches of Ms. Saunders-Velez by male officers.  There are over fifty factual allegations in the Second Amended Complaint [Doc. 51], almost all of which provide specific details about her Fourth and Eighth Amendment claims, including details on when and how she has been subjected to unreasonable searches and delineating the ways that Defendants are denying her necessary medical care.  Specifically, Ms. Saunders-Velez has alleged:

- Ms. Saunders-Velez is a transgender woman being held in custody at a male correctional facility in Colorado.  Second Amended Complaint at ¶ 1.

- She has been diagnosed with Gender Dysphoria and Post Traumatic Stress Disorder (PTSD) from childhood sexual and emotional abuse. *Id.*

2

- Ms. Saunders-Velez's psychiatric and medical condition is so severe that she self-injured her genitals at an early age. She remains extremely depressed and takes anti-depressant medication. *Id.* at ¶ 31.

- Ms. Saunders-Velez has presented as a female since she was a child, has been on hormone therapy since 2015, and has developed female secondary sex characteristics, including full breasts, a feminine shape, soft skin, and a reduction in male attributes. *Id.* at ¶¶ 1, 33.

- From 2014 until 2017, Ms. Saunders-Velez was housed at the Colorado Division of Youth Services in the female facility. During her early years there, Ms. Saunders-Velez was denied medically necessary hormone treatment. *Id.* at ¶ 34.

- It was not until Ms. Saundres-Velez attempted suicide and brought a lawsuit against the State of Colorado that she was provided with necessary medical treatment, including hormone therapy. *Id.* at ¶ 34.

- In 2015, Dr. Thor, an expert in Gender Dysphoria and the World Professional Association for Transgender Health ("WPATH") member, began assessing and treating Ms. Saunders-Velez at the request of the State of Colorado and her Guardian ad Litem. *Id.* at ¶ 29.

- The WPATH expert has opined that Ms. Saunders-Velez requires necessary medical treatment that includes hormone monitoring and adequate levels of psychotherapy, to be called by her female name and appropriate pronouns, and be allowed to express herself as a woman, among other requirements. Although Ms. Saunders-Velez is receiving hormone therapy from Defendants, she is not being provided any of the other treatment she needs for her Gender Dysphoria. *Id.* at ¶ 53.

- The WPATH expert also opined that Ms. Saunders-Velez' medically and socially necessary treatments would be compromised if she was housed in an adult male correctional facility, especially noting the concern that she would be at risk of victimization. *Id.* at ¶ 35.

- The WPATH is the leading professional association for surgeons, doctors, medical researchers and others who specialize in the medical treatment of people with Gender Dysphoria. Based on decades of clinical experience, WPATH has promulgated medical standards of care for treating patients with Gender Dysphoria, the Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People (Standards of Care). *Id.* at ¶ 21.

- The Standards of Care provide that health care for transgender individuals living in an institutional environment should mirror that which would be available to them if they were living in a non-institutional setting within the same community. *Id.* at ¶ 22.

- The Standards of Care provide that transgender inmates should be assessed individually and given appropriate treatment and provided with a fair and tolerant climate, which may consist of outward expression of "one's internal sense of gender identity," including hormone therapy and/or sex reassignment surgery, and social role transition, including access to gender-affirming canteen items. *Id.* at ¶ 23.

- The Standards of Care recognize that placement in a single-sex housing unit, ward, or pod on the sole basis of the appearance of the external genitalia places transgendered individuals at risk for victimization. The Standards provide that housing and shower/bathroom facilities for transgender people living in institutions should take into account their gender identity and role, physical status, dignity, and personal safety. *Id.* at ¶ 24.

- The Prison Rape Elimination Act, 42 U.S.C. § 15601 *et seq*. (PREA), establishes a zero-tolerance standard against sexual abuse in adult prisons and other confinement centers. The Act requires agencies to comply with national standards to eliminate sexual abuse and recognizes that transgender inmates face elevated risks of being victimized. *Id.* at ¶ 25.

- The prison environment can be particularly harmful to transgender individuals, as reports (including the 2009 report by the National Prison Rape Elimination Commission) consistently document that transgender individuals are victims of sexual abuse while in custodial environments including lock-ups, jails and prisons, including while being searched by prison guards. *Id.* at ¶ 18.

- PREA Standard 115.15(a) prohibits facilities from conducting cross-gender strip searches or cross-gender visual body cavity searches except in exigent circumstances or when performed by medical practitioners. *Id.* at ¶ 54.

- PREA Standard 115.15(b) prohibits facilities from conducting cross-gender pat-down searches of female inmates, absent exigent circumstances. *Id.* at ¶ 55.

- PREA Standard 115.15(d)(f) requires facilities to train security staff how to conduct pat-down searches of transgender in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs. *Id.* at ¶ 56.

- Defendants are aware of the particular danger of sexual assault that transgender individuals face in custody, and have a stated policy purported to prevent this violence. However, Defendants have violated this policy, including by retaliating against Ms. Saunders-Velez for reporting sexual abuse. *Id.* at ¶ 26.

- Defendants also lack adequate policies to provide necessary protections to persons suffering from Gender Dysphoria. Defendants permit male guards to search female transgender inmates, including those with Gender Dysphoria. *Id.* at ¶ 27.

- Throughout her incarceration in CDOC, including while in CTCF, Ms. Saunders-Velez has been forced to share a cell with a man, although she is a woman. At times, she has been placed in a "wet" cell, which has a toilet in the cell and which enables other inmates to view her while she uses the toilet. *Id.* at ¶ 42.

- In certain CDOC cell houses that Ms. Saunders-Velez has been placed, including Cell House 1 at CTCF, she had been afforded little privacy to shower. There have been occasions when she has been allowed to shower at appropriate times without men present, or in private shower locations, but there have also been times when she has not been provided complete privacy while showering and using the restroom. *Id.* at ¶ 43.

- Throughout her incarceration in CDOC, including while in CTCF, Ms. Saunders-Velez has been repeatedly taunted by inmates, called derogatory names, and threatened with sexual assault and/or been subjected to "requests" for sexual favors. She lives in a constant state of anxiety. *Id.* at ¶ 44.

- In June 2017, while she was in AVCF, Ms. Saunders-Velez was repeatedly subjected to searches by male guards who sexually assaulted her by grabbing her breasts during the searches. Ms. Saunders-Velez has been repeatedly subjected to unreasonable touching of her body during searches by male guards, including strip searches while she was housed at other CDOC facilities such as AVCF, DRDC, CTCF and CCF. *Id.* at ¶ 40.

- To escape a threatened sexual assault by other inmates at AVCF, Ms. Saunders-Velez swallowed razors and was hospitalized. She was thereafter sent to the CCF for treatment, and then eventually returned to CTCF. *Id.* at ¶ 41.

- Pat searches by male guards are an almost daily occurrence for Ms. Saunders-Velez. Most recently, on or about May 20, 2018, Ms. Saunders-Velez was pat searched by a male staff member who roughly ran his hands over the front of her breasts. Because of the hormones Ms. Saunders-Velez is taking, her breasts are particularly sensitive and touching them is painful. Ms. Saunders-Velez has

repeatedly complained to CDOC about being pat-searched by male guards. *Id.* at ¶ 58.

- Throughout her incarceration at CDOC, Ms. Saunders-Velez has been repeatedly pat searched over her breasts and genitalia and strip searched by male staff members, even after she informed CDOC and CTCF that she does not feel safe being searched by male staff members and that she suffers both physical and psychological pain. *Id.* at ¶ 57.

- CDOC has not trained its staff properly regarding how to conduct pat-down searches of transgender inmates in a professional and respectful manner, and in the least intrusive manner possible, consistent with security needs. *Id.* at ¶ 62.

- Ms. Saunders-Velez has been raped twice while under the custody of CDOC, once in December 2017 and again in April 2018. *Id.* at ¶ 45.

- On multiple occasions, when the taunts and bullying became too threatening for her to ignore, Ms. Saunders-Velez went to CDOC staff with her fears. Instead of removing the offender or transferring Ms. Saunders-Velez to a female facility, however, CDOC placed Ms. Saunders-Velez in "the hole" which is the same as solitary confinement. While in the hole, she is denied privileges afforded all other inmates, including the use of a phone except during very limited times, she cannot access her job or mental health programs, and she is removed from her support group. *Id.* at ¶ 46.

- When Ms. Saunders-Velez did report the threats to CDOC, CDOC put Ms. Saunders-Velez in the hole. Desperate to get out of solitary confinement, Ms. Lindsay-Velez was forced to recant the threats and was then placed back into the same living unit. *Id.* at ¶ 49.

- CDOC has placed Ms. Saunders-Velez in the hole despite being notified, by both Ms. Saunders-Velez and her legal counsel, that Ms. Saunders-Velez suffers extreme anxiety and has suicidal ideas while in solitary confinement. Placement of Ms. Saunders-Velez in solitary confinement when she complains of threats from other inmates significantly deters her from reporting those threats and is akin to punishing her for reporting the threats. *Id.* at ¶ 47.

- **<u>Every time</u>** Ms. Saunders complains about a sexual assault against her, she is strip searched. *Id.* at ¶¶ 59 and 60.

- **<u>Every time</u>** that Ms. Saunders-Velez leaves or enters a new facility, transfers between living units, meets with her mental health provider or therapist, or meets with her legal counsel, she is strip searched. *Id.*

- **Every time** Ms. Saunders-Velez has been sent to the hole or "removed from population," she is "manually" strip searched, meaning that she is physically touched, including her private areas, during the search. Ms. Saunders-Velez estimates that, in the past year, **she has been strip searched approximately one dozen times by male guards**. On or about December 9, 2017, for example, she was stripped naked and manually searched by a male officer while her hands were cuffed. She has since been strip searched by male guards despite her express objections on three other instances. During these strip searches, male guards removed Ms. Saunders-Velez's clothes, lifted her penis, groped her breasts, and required her to spread her butt cheeks. These strip searches are not only physically painful, they are extremely humiliating. *Id.*

- After Ms. Saunders-Velez complained about the threats against her on May 21, 2018, Ms. Saunders-Velez was told that she was going to be taken to the hole. First, she was taken to the infirmary for a pre-segregation anatomical, where the standard procedure is for a female medical staff to perform a visual inspection to ensure the inmate has no injuries, with male officers present. Ms. Saunders-Velez, cuffed and with leg shackles, protested against being searched in front of male officers and refused to take off her clothes. Parts of her clothing were then lifted for a visual inspection. Ms. Saunders-Velez was then taken to the segregation housing unit for a pre-housing strip search, her hands cuffed behind her back and her wrists restrained. She again refused to participate in another strip search - but given the restraints would not have been able to physically remove her own clothing. Her clothing was then cut off of her and she was forced to the ground and her breasts and genital area touched by the male guards. As has occurred before, Ms. Saunders-Velez received a disciplinary write-up for refusing these searches, suffered a loss of privileges, and had the date for her parole hearing delayed. *Id.* at ¶ 60.

- Ms. Saunders-Velez was raped the second time at CTCF in April 2018. Afterwards, there was wide-spread media coverage regarding her allegation that she was raped. In response, the Warden at CTCF, Defendant Romero, met with other transgender inmates at the facility and arranged for them to speak to the press and participate in photo shoots. In that press coverage, those inmates criticized Ms. Saunders-Velez for reporting the rape and claimed that she either asked for it or called her a liar – although none of them witnessed the event. Ms. Saunders-Velez was then housed in the same unit as these individuals who were openly hostile to her, despite her repeated requests to be transferred to another living unit. *Id.* at ¶ 48.

- The searches of Ms. Saunders-Velez were not conducted in exigent circumstances and were not performed by medical practitioners (other than the anatomical

inspections), as required by PREA regulations and in violation of Ms. Saunders-Velez's constitutional rights. *Id.* at ¶ 61.

- The searches of Ms. Saunders-Velez were not reasonably related to legitimate penological interests of the Defendants. *Id.* at ¶ 76.

- Defendants fail to screen inmates appropriately or use available information to separate vulnerable inmates from likely aggressors and ignore that transgender inmates are substantially vulnerable to future abuse. *Id.* at ¶ 50.

- Defendants also fail to provide proper staffing and videotaping in certain Cell House areas, including in Cell House 1 in CTCF. *Id.* at ¶ 51.

- Defendants repeatedly violated Ms. Saunders-Velez's constitutional rights by failing to provide her with medically necessary treatment for her Gender Dysphoria. *Id.* at ¶ 52.

- Contrary to her required medical treatment and WPATH Standards of Care, the PREA and Ms. Saunders-Velez's constitutional rights, Defendants have prohibited Ms. Saunders-Velez from expressing her female gender in a variety of ways, including: by prohibiting her from purchasing and wearing feminine clothing approved by the CDOC for women and only providing undergarments that suppress her identity as a woman; by prohibiting her from following grooming standards approved by the CDOC for women, including growing her hair; and by prohibiting her from using items that other female inmates are permitted to purchase and use, including cosmetic and toiletry items appropriate for her gender identity such as facial hair remover. *Id.* at ¶ 64.

- Ms. Saunders-Velez has been disciplined and threatened with discipline for wearing makeup. *Id.* at ¶ 65.

- Despite the expert opinion that it was a necessary part of Ms. Saunders-Velez's medical treatment that she be allowed to identify as a woman, Defendants refuse to allow her to be addressed by feminine pronouns. *Id.* at ¶¶ 67, 68, 69, 70.

- Ms. Saunders-Velez has been referred to as a "tranny" by an officer at CTCF. *Id.* at ¶ 69.

- Defendants were aware that the medically accepted standards of treatment for Gender Dysphoria include allowing the person with the dysphoria to express the person's gender identity, to live in a community that respects the person's gender identity and provides protection against victimization of these individuals. *Id.* at ¶ 80.

- Defendants knew that the failure to treat Plaintiff's Gender Dysphoria consistent with prevailing medical standards for treating her condition placed her at substantial risk of self-mutilation, auto-castration, and severe emotional distress. *Id.* at ¶ 81.

- With deliberate indifference, malice and/or reckless disregard for Ms. Saunders-Velez's serious medical needs, Defendants have routinely denied Ms. Saunders-Velez adequate medical treatment by housing her in a male facility without adequate safeguards for her safety and mental health well-being, subjecting her to repeated pat down and strip searches by male guards, refusing to train DOC staff on how to appropriately accommodate, treat, and communicate with Plaintiff and other individuals with Gender Dysphoria, and by refusing to allow her to live her daily existence in a manner consistent with her gender identity. *Id.* at ¶¶ 82 – 84.

- As a result, Ms. Saunders-Velez has suffered extreme harm. *Id.* at ¶ 85.

**C.      Plaintiff has Adequately Pled Fourth Amendment Claim for Relief.**

Although a person has limited privacy rights while in custody, the Fourth Amendment still mandates that searches that invade a person's privacy must be *reasonable*. Whether a pat-down or strip search of a person in custody is reasonable requires a case-by-case analysis that considers the scope of the intrusion and the manner in which it occurred, as well as the justification for the search and the place in which it occurred. *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

The Tenth Circuit has held that even *one* instance of a visual body cavity strip search being conducted of a person in custody in the presence of the opposite sex can violate the Fourth Amendment. *Hayes v. Marriott,* 70 F.3d 1144 (10th Cir. 1995). In so holding, the Court stated that "prisoners do retain a limited constitutional right to bodily privacy, particularly as to searches viewed or conducted by members of the opposite sex. . . . [and] one of the clearest forms of degradation in Western Society is to strip a person of his clothes. The right to be free

9

from strip searches and degrading body inspections is thus basic to the concept of privacy." *Id.* at 1146 (quoting 3 *Privacy Law and Practice* ¶ 25.02[1] (George B. Trubow ed. (1991)).

Over the last thirty years, "a litany" of federal cases have determined that "cross-gender strip searches in the absence of an emergency violate an inmate's rights under the Fourth Amendment." *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135 (9th Cir. 2011) (discussing cases from the First, Fourth, Seventh, and Tenth Circuits); *also see Moore v. Carwell*, 168 F.3d 234, 235 (5th Cir. 1999) (conducting a cross-gender strip search in the absence of an emergency can give rise to a Fourth Amendment violation); *Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1008 (8th Cir. 2007) (the law has been clear since 2001 that "strip searches should be conducted by officials of the same sex as the individual to be searched.").

In its motion, Defendants summarily state that "[g]iven that Plaintiff has not completed sex reassignment, Plaintiff's allegations fail to show that being searched by male staff is unreasonable under the Fourth Amendment." Defs' MTD [Doc. 54] p. 3. Defendants cite no law in support of this proposition. Instead, Defendants appear to assert that these searches are conducted for the purpose of "legitimate penological interests" and thus Plaintiff's Fourth Amendment claim must fail as a matter of law.

Defendants are correct that Plaintiff is not disputing that there may be a legitimate penological interest in conducting searches of those in custody. However, the issue here is *how* those searches are being conducted. Despite Defendants' argument that these searches are conducted in a constitutional manner – those factual disputes are not before the Court at this

time. Instead, the only issue is whether Ms. Saunders-Velez has sufficiently stated a claim upon which relief can be granted.[1]

Here, Ms. Saunders-Velez has sufficiently alleged that the searches are not reasonable under the Fourth Amendment.  She has provided details regarding the manner in which the searches invade her privacy rights, how often they occur, the scope of the searches, that Defendants lack legitimate reasons for the use of male guards in conducting those searches, and how the searches are contrary to her necessary medical care.  She has further explained that she is strip searched every time she complains of sexual assaults against her and thus the searches are deterrents to her reporting her status as a victim, and has provided specific details about what has happened to her during those searches.  *See* Court's Order ([Doc. 43] p.9) regarding Defendants' [First] Motion to Dismiss, *citing Shaw v. District of Columbia*, 944 F.Supp.2d 43, 56 (D.D.C. 2013). Accordingly, Ms. Saunders-Velez has sufficiently stated a claim for relief for violations of her Fourth Amendment rights.

**D.      Plaintiff has Adequately Pled Eighth Amendment Claim for Relief.**

Defendants again move to dismiss Ms. Saunders-Velez's Eighth Amendment claim under Rule 12(b)(6).

In order to plead a claim for relief for deliberate indifference to serious medical needs under the Eighth Amendment, plaintiff must allege a serious medical need and that the defendant knew of and disregarded an excessive risk of harm to the plaintiff's health and safety.  *Farmer v. Brennan,* 511 U.S. 825, 842 (1994).

---

[1] In fact, Defendants have not yet filed an Answer to any of the Plaintiff's complaints in this case so there is no evidence currently in the record that Defendants have even asserted a "legitimate penological interest."

Here, Defendants admit that Ms. Saunders-Velez has a serious medical need as a result of her diagnosis of Gender Dysphoria.  Defendants' only argument is that she has not sufficiently alleged that the refusal to provide her with specific treatments created an "excessive risk" to her health and safety. Defs' MTD [Doc. 54] p. 5. In support of their argument, Defendants state that this is just a "disagreement" over appropriate treatment, that there is "no evidence" that Defendants failed to make informed judgments about Plaintiff's treatment, and that Defendants are allowed to disregard the expert opinion of Dr. Thor to the contrary. *Id.* at p. 4-6. In sum, Defendants are arguing that they can dispute Ms. Saunders-Velez's factual allegations and that this suffices for Rule 12(b)(6) purposes. Again, Defendants confuse the standard to allege sufficient facts to state a claim for relief with the standards of proving a claim.

In her Second Amended Complaint, Ms. Saunders-Velez has alleged that as a result of her Gender Dysphoria, she has engaged in self-mutilation, has suicidal tendencies, severe anxiety, depression and other serious mental health symptoms.  She alleged that she attempted suicide while previously in the custody of the State of Colorado because of its failure to adequately treat her Gender Dysphoria by refusing to allow her to live in conformity with her gender identity. Ms. Saunders-Velez has also alleged that placing her in solitary confinement when she is sexually assaulted and subjecting her to searches by male guards without exigent circumstances has exacerbated her mental health condition and increases her urges to self-harm. She alleges Defendants are aware of all of these facts and knowingly fails to provide her necessary medical treatment for her serious medical condition.  As such, Ms. Saunders-Velez has more than sufficiently alleged a claim under the Eighth Amendment. See *Kothmann v. Rosario,* 558 F. App'x. 907, 908 2014 U.S. App. LEXIS 4263 **, 2014 WL 889638 (11th Cir. 2014).

(Pre-operative transgender plaintiff sufficiently stated an Eighth Amendment claim by alleging that medically-accepted and appropriate treatment for gender dysphoria included hormone treatment, gender expression, and sex reassignment surgery, defendant was aware of the medically necessary treatment and knew about plaintiffs hormone treatment history and her symptoms as a result of the lack of treatment, and that defendant denied appropriate treatment.); *Diamond v. Owens,* 131 F. Supp. 3d 1346, 1371-1374 (M.D. Ga. 2015) (plaintiff sufficiently stated Eighth Amendment claim for relief when she alleged: defendants were aware of plaintiff's gender dysphoria diagnosis, were aware of the medically accepted and recognized treatment for the condition and plaintiff's request for ongoing treatment and care, refused to provide plaintiff with care that was requested or recommended by previous evaluations, and aware of her attempts to commit suicide and self-harm); *De'Lonta v. Johnson,* 708 F.3d 520, 525-526 (4th Cir. 2013) (pre-operative transgender woman sufficiently stated an Eighth Amendment claim for relief when she alleged that defendant knew of her Gender Dysphoria diagnosis, provided her hormone therapy as a result of an earlier lawsuit, that defendant did not adequately address plaintiff's serious medical needs, and defendant was aware that its treatment (or lack thereof) of plaintiff was resulting in plaintiff's urges to self-harm. The Court specifically rejected the argument that defendants' decision to provide some treatment precluded a claim under the Eighth Amendment.).

### III.
### CONCLUSION

It has been almost one year since Plaintiff filed her original complaint in this case and yet Defendants have still yet to file an Answer. Plaintiff has a one- to three-year sentence in the Department of Correction. In this case, justice delayed will truly be justice denied. Plaintiff

respectfully requests that this Court order Defendants to file an Answer in this matter forthwith

and to set a trial date so that a determination of the merits can be made without further delay.

Dated this 28th day of June 2018.

Respectfully submitted,

*s/ Paula Greisen*
Paula Greisen
Meredith A. Munro
KING & GREISEN, LLP
1670 York Street
Denver, Colorado 80206
(303) 298-9878 telephone
greisen@kinggreisen.com
munro@kinggreisen.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June 2018, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Chris W. Alber
Colorado Department of Law
Civil Litigation and Employment Law Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO  80203
Chris.Alber@state.co.us

*Counsel for Defendants*

*s/ Laurie A. Mool*