# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01654-MSK-NRN

SAUNDERS-VELEZ,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS (CDOC),
TRAVIS TRANI, in his official capacity as Director of Prisons,
MIKE ROMERO, in his official capacity as Colorado Territorial Correctional Facility Warden, RICK RAEMISCH, in his official capacity as Executive Director of Colorado Department of Corrections,
RYAN LONG, in his official capacity as Denver Reception and Diagnostic Center Warden,
KELLIE WASKO, in her official capacity as Deputy Executive Director of Colorado Department of Corrections,
DENVER RECEPTION AND DIAGNOSTIC CENTER (DRDC), and
THE COLORADO TERRITORIAL CORRECTIONAL FACILITY (CTCF),

Defendants.

## PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES

Plaintiff Lindsay Saunders-Velez, through her attorneys, Paula Greisen and Meredith Munro of the law firm KING & GREISEN, LLP, and Lynly S. Egyes and Shawn Thomas Meerkamper of TRANSGENDER LAW CENTER, respectfully submits her Motion to Compel Discovery Responses pursuant to Federal Rule of Civil Procedure 37(a), and in support thereof states as follows:

### I. INTRODUCTION

This is a civil rights action arising out of Defendants'—Colorado Department of Corrections, and officers thereof (hereinafter collectively "CDOC")—mistreatment of Plaintiff

1

Lindsay Saunders-Velez, a 20-year-old incarcerated transgender woman in CDOC's care. CDOC has, at bottom, failed to treat Ms. Saunders-Velez as the young woman she is, including by housing her with men in blatant disregard for her safety, subjecting her to unnecessary and demeaning strip searches conducted by male guards, refusing to refer to her as a woman, and refusing to allow her access to the clothing and personal items it allows to other women.

Since initiating this lawsuit, Ms. Saunders-Velez has been the victim of repeated sexual violence, as well as a harassment and intimidation campaign undertaken by CDOC employees.

## II.     RELEVANT PROCEDURAL HISTORY

Plaintiff filed her complaint *pro se* on July 7, 2017 [Doc. 1], raising issues related to being exclusively searched by male guards, being denied access to clothing and personal items CDOC allows to other incarcerated women, and the failure to adequately treat her gender dysphoria. Plaintiff filed an Amended Complaint on August 7, 2017 [Doc. 5]. On January 19, 2018, Plaintiff, still unrepresented, filed a document with the Court entitled "Memorandum" [Doc. 25], in which she informed the Court of her first sexual assault at Colorado Territorial Correctional Facility, announced that she intended to challenge her assignment to a men's prison despite the obvious risks thereof, and detailed her prior attempts to raise this issue with CDOC.

Subsequently, Plaintiff retained counsel from the law firm of King & Greisen, LLP, who entered their appearances on April 19, 2018 and filed Plaintiff's Second Amended Complaint May 30, 2018 [Doc. 51]. Plaintiff's Second Amended Complaint brings § 1983 claims under the Fourth and Eighth Amendments. Co-counsel for Plaintiff, Lynly S. Egyes and Shawn Thomas Meerkamper of Transgender Law Center, entered their appearances on August 20, 2018. Plaintiff's counsel has also notified Defendants of the intention to file an additional amended

complaint based upon 42 U.S.C. Section 1985 for the alleged conspiracy by CDOC officials to intimidate Plaintiff from pursuing her lawsuit.

   A.   **Defendants' Deficient Responses to Plaintiff's Pro Se Subpoena to Produce Documents**

Plaintiff served a *pro se* Subpoena to Produce Documents on April 2, 2018 requesting in part her "complete … offender file." *Exhibit 1*. Defendants counsel sent responsive documents to Plaintiff's counsel on May 15, 2018. However, on May 21, Plaintiff's counsel wrote to Defendants' counsel explaining that Defendants' responses were deficient in that Ms. Saunders-Velez's offender file was not complete in multiple respects. *Exhibit 2, Emails from Greisen to Alber, et al., dated May 21, 2018.* First, the "ChronLog" of Plaintiff's offender file was truncated to entries before April 2, 2018, and Plaintiff's counsel requested the complete ChronLog. Second, Defendants failed to produce Plaintiff's CDOC working file, grievances, and medical file. *Id.* Finally, the offender file Defendants produced omitted records relating to evaluations of Ms. Saunders-Velez for placement in a women's prison by CDOC's Gender Dysphoria Committee. *Id.* Defendants' counsel responded on May 25 that he would produce the additional documents. *Exhibit 3, Email from Alber to Greisen, et al., dated May 25, 2018.*

Defendants did not produce any further responsive documents until July 10, 2018. Moreover, that supplemental production was still deficient. Although Plaintiff had requested her "complete… offender file," Defendants still had not produced all of her grievances and the responses thereto, records relating to Ms. Saunders-Velez's placement in a men's rather than a women's prison, as well as other the other requested CDOC documents. *Exhibit 4, Email from Greisen to Alber, et al., dated July 13, 2018.* Defendants did produce an updated ChronLog, but failed to produce many of the requested documents, including the call records related to Plaintiff,

3

the recorded statements related to Plaintiff's sexual assault allegations, or any of the documents concerning the evaluation by CDOC's Gender Dysphoria Committee. *Exhibit 5, Email from Greisen to Alber, et al., dated July 15, 2018*.

Defendants failed to produce additional documents over the next month, and on August 15, with an expert report deadline looming, the parties agreed to a new scheduling order and an additional two weeks for discovery responses, until August 29, 2018. *See Exhibits 6-8, Emails between Greisen and Alber, et al., dated August 15, 2018.*

To date, despite the extensive back-and-forth detailed above, Defendants have still failed to produce Ms. Saunders-Velez's full offender file, including:

- Records regarding the evaluation by CDOC's Gender Dysphoria Committee;
- Plaintiff's kites, grievances and responses;
- Records of the internal emails or documents of CDOC regarding Plaintiff;
- Records regarding the interviews conducted of Plaintiff regarding her alleged sexual assaults; and
- CDOC's working file regarding Plaintiff.

**B.     Defendants' Failure to Make 30(b)(6) Designations**

Plaintiff issued her Notice of Depositions Pursuant to Federal Rule of Civil Procedure 30(b)(6) on July 16, 2018, asking CDOC to designate representatives to testify on, *inter alia*, CDOC's various policies and practices regarding transgender women and incidents of sexual violence, and the application of those policies to Plaintiff. *Exhibit 10*. Defendants have delayed producing those designations and scheduling those deposition again and again. Defendants' counsel claimed on July 18, 2018 that he would look into scheduling the 30(b)(6) depositions. *Exhibit 11, Email from Alber to Greisen, et al., dated July 18, 2018.* However, Plaintiff had received no response by August 15. Upon inquiry, Defendants' counsel replied that he did not

have the 30(b)(6) designations, and that he would follow up that day. *Exhibits 6 & 7, Emails between Greisen and Alber, et al., dated August 15, 2018.* However, weeks later, Defendants have failed to make their designations and work toward scheduling these critical depositions.[1]

    **C.    Defendants' Deficient Responses to Plaintiff's Interrogatories and Requests for Productions**

Plaintiff submitted her First Set of Interrogatories on July 2, 2018, requesting that CDOC identify all transgender people in its custody, and specifying that such information would be kept confidential, "attorney eyes only." *Exhibit 12*. Plaintiff explained that counsel viewed these individuals as potential witnesses to Plaintiff's case and wanted to contact these potential witnesses. Defendants' counsel responded on July 31, 2018 that CDOC would not provide that information, and offered instead to contact each transgender person in its custody and pass along Plaintiff's counsel's contact information. *Exhibit 13, Email from Alber to Greisen, et al., dated July 31, 2018*. Plaintiff's counsel responded that, given how CDOC has treated Ms. Saunders-Velez since she initiated this lawsuit, Plaintiff would not trust CDOC to handle such interactions with other transgender people without intimidation. *Exhibit 14, Email from Greisen to Alber, et al., dated July 31, 2018.* Defendants then responded to Plaintiff's First Set of Interrogatories by refusing to identify the other transgender people in their custody and asserting various objections and privileges. *Exhibit 15, Defendants' Response to Plaintiff's First Set of Interrogatories.*

Plaintiff served her Second Set of Interrogatories, Requests for Production of Documents, and Requests for Admissions on July 16, 2018. *Exhibit 19*. Defendants' responses were due on

---

[1] In their Initial Disclosure, Defendants only identified the Warden at CTCF, the Director of Prison Operations and two grievance offers as individuals with knowledge regarding this case. Yet, Defendants have failed to provide the necessary documents to conduct the depositions of these witnesses.

August 15, but Plaintiff agreed to a two-week extension to August 29. *Exhibits 6-8, Emails between Greisen and Alber, et al., dated August 15, 2018.* On August 29, 2018, counsel for the Defendants stated in an email that he would need two more days to respond to the Second Set of Discovery Requests. On August 31, Defendants' counsel sent responses to Plaintiff's Requests for Admissions, but apologized that he would need "just a bit more time to finalize the interrogatory responses and the responses to the requests for production of documents." *Exhibit 9, Email from Alber to Greisen, et al., dated August 31, 2018.* To date, there has been no further response from the Defendants with respect to the Second Set of Discovery requests.

Plaintiff served her Third Set of Requests for Production of Documents on July 20, 2018, *Exhibit 16*, requesting in part documents related to disciplinary actions taken against Mr. Mario Castillon, a friend and ally to Plaintiff who Plaintiff alleges Defendants punished as a component of their campaign of retaliation and intimidation against Plaintiff. *Exhibit 17, Email from Greisen to Alber, et al., dated July 20, 2018.* Plaintiff's request for production made clear that Mr. Castillon had authorized Defendants to release such information to Plaintiff's counsel. *Exhibit 16*. Despite this release, and despite Defendants' knowledge of Plaintiff's nascent retaliation claim, Defendants responded to the request for production by refusing to produce documents and asserting that the request was unrelated to Ms. Saunders-Velez's case. *Exhibit 18, Defendants Responses to Plaintiff's Third Set of Requests for Production of Documents*.

### CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A) & FEDERAL RULE OF CIVIL PROCEDURE 37(a)(1)

Plaintiff's counsel Paula Greisen certifies that she has conferred in good faith with Defendants' counsel regarding Defendants' position on this Motion. As extensively laid out above, Plaintiff's counsel has corresponded at length with Defendants' counsel, requesting

missing documents, inquiring about outstanding issues, and agreeing to deadline extensions. Plaintiff's counsel has repeatedly asked for Defendants' position pursuant to Local Rule 7.1, and has not received a response. Plaintiff's counsel interprets this silence and an indication that Defendants will oppose this Motion.

### III. ARGUMENT

#### A. Defendants' Repeated Delays and Failure to Timely Produce Documents Are Inexcusable

Plaintiff has been waiting for nearly two months to receive Defendants' 30(b)(6) designations. Plaintiff still has not received all of the documents responsive to Plaintiff's *pro se* Subpoena to Produce Documents, which was served on April 2, 2018, more than five full months ago. And, Defendants have failed to respond in any way to any of Plaintiff's interrogatories and requests for productions. With respect to Plaintiff's Second Set of discovery requests, Defendants have not made timely objections or filed any request for extension with this Court. Rather, Defendants are simply refusing to cooperate with discovery either diligently or in good faith.

Therefore, Plaintiff believes she has no option but to ask this Court to order that Defendants strictly comply with all future discovery deadlines and respond to all outstanding discovery requests immediately. Further, because of Defendants' failure to engage in discovery in good faith so far, Plaintiff requests that any objections to her outstanding discovery requests be deemed waived. *See* Fed. R. Civ. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."); *Starlight Intl, Inc. v. Herliby*, 181 F.R.D. 494, 496-97 (D. Kan. 1998) (good cause requires "some showing of 'good faith of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified'") (*quoting Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 175 (10th Cir. 1996)).

*See also Pham v. Hartford Fire Ins. Co*., 193 F.R.D. 659, 2000 U.S. Dist. LEXIS 11598, Civ. No. 98-WM-1833 (holding that defendant waived its right to assert any objections, including the attorney-client privilege, by failing to timely object to discovery).

    **B.    Plaintiff Is Entitled to Discovery Identifying the Other Transgender People in Defendants' Custody**

Defendants refused to answer Plaintiff's First Set of Interrogatories requesting that Defendants identify the other transgender people in CDOC's custody. Defendants responded with vague and unsupported objections that complying with this request would violate transgender individuals' privacy interests, that their identities are protected by official information privilege, and that the request is not relevant and proportional. *Exhibit 15*. Defendants' response also referenced a so-called alternative, which Plaintiff's counsel had rejected due to concern said alternative would not be carried out in good faith. *Exhibit 14*. None of Defendants' objections have merit, and given the pattern of behavior Plaintiff has alleged, Defendants' proposed alternative is not reasonable.

Plaintiff's request that CDOC identify the other transgender people in its custody is both relevant and proportional. At this time, there are over 100 transgender individuals in the custody of CDOC with gender dysphoria. Information about these individuals is relevant because Plaintiff's Second Amended Complaint alleges that Defendants have violated her rights *because she is a transgender woman* and that Defendants' policies and practices *regarding the incarcerating of transgender people* violate her rights. For example, Plaintiff alleges that Defendants incarcerate her in a men's prison despite the obvious risks to her safety. *Plaintiff's Second Amended Complaint* [Doc. 51] at 19. Defendants have admitted that it is their policy is to assign all transgender women who have not undergone genital sex reassignment surgery to men's

prisons. *Exhibit 20, Defendants Responses to Plaintiff's Second Set of Requests for Admissions*. The experiences of other transgender people in CDOC's custody, and whether they have also suffered sexual violence in CDOC's men's prisons, is eminently relevant to the obviousness of the risk of housing Plaintiff in a men's prison, and to Defendants' knowledge of that risk. Similarly, Plaintiff alleges that Defendants have refused to appropriately train CDOC staff on accommodating, treating, and communicating with transgender people and that Defendants refuse to use the correct female name and pronouns with respect to these women. *Plaintiff's Second Amended Complaint* at 19-20 Defendants have denied that they have a policy of refusing to refer to transgender people by their preferred pronouns and have produced a regulation that indicated their policy is the opposite. *Exhibit 20; CDOC Administrative Regulation 100-19(IV)(A)(1)(b)(5)* ("Intentional misuse of gender pronouns and titles with transgender or intersex offenders is prohibited.") The experience of other transgender people in CDOC custody, and whether they have been treated respectfully and referred to with the appropriate pronouns, is therefore necessary to determine whether CDOC staff have been adequately trained on CDOC policy. Finally, because Plaintiff intends to bring a claim of retaliation and has given notice of such claim, the experiences of other transgender people in CDOC custody are relevant to whether Defendants' reprehensible treatment of Ms. Saunders-Velez can be correctly attributed to retaliation, or whether such treatment is standard for the transgender women whom Defendants incarcerate in men's prisons.

      Plaintiff's request that Defendants identify all other transgender people in their custody is also proportional. As an initial matter, Defendants' offer of a so-called alternative belies any claim that complying with this request would be disproportionately burdensome. Defendants

offered to contact each of the other transgender people in their custody rather than identifying them to Plaintiff. Implicit in that offer is that the identities of the other transgender people in CDOC custody are readily available or easily ascertainable. Further, as discussed above, Plaintiff alleges that her rights are violated by CDOC policies that apply to transgender people *system-wide*. The discovery of all other transgender people in CDOC custody is thus proportionate in scale to the blanket nature of the CDOC policies Plaintiff challenges. Similarly, Plaintiff has now been housed in at least four different CDOC men's prisons. Her Second Amended Complaint complains of mistreatment at two of those facilities, and recent developments relevant to her forthcoming retaliation claim involve at least two additional facilities. Plaintiff's request to know who the other transgender people are and where they are housed is thus also proportional in a geographic sense, given the breadth of facilities where the Defendants have incarcerated her.

Defendants' attempt to invoke the privacy interests of the other transgender people they incarcerate also fails. First, Defendants cite no law in support of their objection. Second, Plaintiff's request does not seek "medical and/or mental health information" as Defendants' objection suggests. Plaintiff requested that CDOC "[i]dentify every transgender inmate in CDOC, including the inmate's name, DOC number, and current prison facility." Plaintiff did not ask for medical records, diagnoses, or treatment regimens. While many people who are transgender have gender dysphoria diagnoses, the two are not synonymous. Having gender dysphoria is a medical condition. Being transgender is a social designation. Just like CDOC cannot legitimately claim that identifying inmates with a particular ethnicity or who practice a particular religion would violate medical privacy laws, CDOC cannot legitimately claim that identifying transgender

inmates would violate medical privacy laws. In fact, the "gender" of all those in custody at the CDOC is posted on CDOC's public website.

CDOC makes a similar objection on the basis of official information privilege, asserting that identifying the transgender people in CDOC could create unspecified "safety and security concerns." *Exhibit 15*. However, first, Plaintiff's request specifically stated that such information would be kept confidential "attorney eyes only." Thus, the implication that answering Plaintiff's interrogatory would be akin to making such information public has no basis in reality. And, more fundamentally, as the facts of this case make clear, the knowledge of who is transgender in CDOC's prisons is already abundantly obvious to other people in those prisons, as evidenced by the fact that CDOC arranged an interview with five other transgender women with the Denver Post during which these women labeled Plaintiff a "snitch" and a liar and stated that she must have "asked" to be raped. Plaintiff has suffered repeated rape, violence, and unrelenting harassment because it is obvious to CDOC guards and other incarcerated people that she is a woman, who happens to be transgender, in a men's prison. Thus, it is patently absurd to suggest that it is the disclosure of transgender people's identities to Plaintiff's counsel—rather than CDOC policy, procedure, and practice—that causes safety and security concerns for transgender people.

Finally, CDOC's suggested alternative is not a reasonable compromise. Defendants' counsel "offered" that, rather than answer Plaintiff's interrogatory, CDOC could contact each transgender person in its custody and arrange for them to contact Plaintiff's counsel if they wanted to. However, given both the facts alleged in this case and the ways in which CDOC has acted to intimidate and retaliate against Plaintiff since filing, CDOC cannot be trusted to fairly

and neutrally play intermediary between Plaintiff's counsel and the other transgender people CDOC incarcerates.

Accordingly, Plaintiff respectfully requests that this Court order Defendants to respond to Plaintiff's first interrogatory and "[i]dentify every transgender inmate in CDOC, including the inmate's name, DOC number, and current prison facility." Plaintiff is also amenable to, and further requests that this Court issue a protective order memorializing the portion of Plaintiff's interrogatory that "[a]ll identifying information will be treated as confidential, subject to 'attorney eyes only,' unless and until the person identified gives permission for his or her identity to be public."

### C. There is No Excuse for the Complete Failure of CDOC to timely respond to Plaintiff's Second Set of Discovery Requests

Defendants have offered no legitimate reason for the failure to timely respond to Plaintiff's Second Set of Discovery requests. *See Ex. 19*. As Defendants have not timely responded and have not filed any motion for extension of time with this Court, Plaintiff requests that this Court strike any objections asserted by Defendants to responding to those requests and compel responses to these requests. Fed. R. Civ. P. 33(b)(4); *see e.g.,* Pham, 193 F.R.D. at 662 (and cases cited therein).

### D. Plaintiff is Entitled to Discovery Relating to CDOC's Retribution Against Mario Castillon

Plaintiff's counsel wrote to Defendants' counsel on July 20, 2018, detailing how Plaintiff's friend and ally Mario Castillon had been repeatedly and arbitrarily punished because of his association with and support for Ms. Saunders-Velez. *Exhibit 17*. Plaintiff's counsel further informed Defendants' counsel that this treatment of Mr. Castillon was part of "a very targeted

effort to intimidate and retaliate against my client," and that Plaintiff would seek to amend her complaint to include facts and claims related to such retaliation. *Id*. Despite Defendants' knowledge of these facts, Defendants refused to produce documents related to the disciplinary campaign against Mr. Castillon. *Exhibit 18*. In doing so, Defendants objected that Plaintiff's request was not related to any claim or defense in this action, and that the request was not proportional because it was not limited in time.

    Plaintiff's request was limited in time. Plaintiff requested "[a]ll documents regarding any disciplinary actions or restrictive privileges actions taken with respect to Mr. Mario Castillon *with respect to any of his communications or interactions with, or related to Plaintiff in this case in any way.*" *Exhibit 16* (emphasis added). Defendants had further context for this request in the form of Plaintiff's counsel's July 20 email. The request clearly refers to disciplinary actions taken thereabout July 20, 2018 or, at a maximum, since the filing of this case in July 2017. Reviewing one month's worth, or one year's worth, of a single individual's disciplinary records is hardly disproportionate or overly burdensome.

    Defendants' objection that the requested records are unrelated to the claims in this action is both circular and obstructive. First, although Plaintiff had not yet amended her complaint to add claims and facts related to retaliation, the underlying retaliation is retaliation *for having filed this lawsuit*. The claims in this case are the reason for the retaliation, and as Plaintiff's counsel has made clear, that retaliation in part consisted of specific, unwarranted disciplinary actions against Plaintiff's friend and supporter, Mr. Castillon. The records of those disciplinary actions are thus very much related to the claims in this case because the claims in this case were the motivation for

those disciplinary actions. Further, these records are key to Plaintiff's investigation of retaliation for the purposes of amending her complaint to add retaliation claims.

Therefore, Plaintiff seeks an order from this Court requiring CDOC to produce documents related to the disciplinary actions it took against Mr. Castillon as a result of his contact with Plaintiff since this case was filed.

## CONCLUSION

For the reasons above, Plaintiff respectfully requests that the Court grant this motion, and order Defendants to diligently and immediately respond to outstanding discovery requests, set the requested depositions, and provide the documents responsive to the subpoena. Plaintiff also requests that any objections by Defendants to the Second Set of Discovery be deemed waived.

DATED this 10th day of September 2018.

Respectfully submitted,

*s/ Paula Greisen*
Paula Greisen
Meredith A. Munro
KING & GREISEN, LLP
1670 York Street
Denver, Colorado 80206
(303) 298-9878 telephone
greisen@kinggreisen.com
munro@kinggreisen.com

Shawn Thomas Meerkamper
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612
(510) 587-9696
shawn@transgenderlawcenter.org

Lynly S. Egyes
Transgender Law Center
594 Dean Street, Suite 47
Brooklyn, NY 11238
(973) 454-6325 telephone
lynly@transgenderlawcenter.org

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September 2018, I electronically filed the foregoing **PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Chris W. Alber
Colorado Department of Law
Civil Litigation and Employment Law Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
Chris.Alber@state.co.us

*Counsel for Defendants*

                *s/ Laurie A. Mool*