**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No.  17-cv-01654-MSK-NRN**

SAUNDERS-VELEZ,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS (CDOC),
TRAVIS TRANI, in his official capacity as Director of Prisons,
MIKE ROMERO, in his official capacity as Colorado Territorial Correctional Facility
Warden,  RICK RAEMISCH, in his official capacity as Executive Director of Colorado
Department of Corrections,
RYAN LONG, in his official capacity as Denver Reception and Diagnostic Center Warden,
KELLIE WASKO, in her official capacity as Deputy Executive Director of Colorado
Department of Corrections,
DENVER RECEPTION AND DIAGNOSTIC CENTER (DRDC), and
THE COLORADO TERRITORIAL CORRECTIONAL FACILITY (CTCF),

Defendants.

---

**REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION
TO COMPEL DISCOVERY**

---

Plaintiff Lindsay Saunders-Velez, through her attorneys, Paula Greisen and Meredith

Munro of the law firm KING & GREISEN, LLP, and Lynly S. Egyes and Shawn Thomas

Meerkamper of TRANSGENDER LAW CENTER, respectfully submits her Reply to Defendants'

Response to the Motion to Compel Discovery as follows:

**I.      SUMMARY**

Defendants were served with a subpoena on May 15, 2018 requiring them to produce a

"complete" copy of Plaintiff's DOC file.  Four months later, Defendants have yet to fully comply

with the subpoena.

On July 16, 2018, Plaintiff served Defendants her Second Set of Interrogatories and Request for Production Request, as well as with a Rule 30(b)(6) deposition notice.  Now, over three months later, Defendants have not scheduled any of these depositions, or even informed Plaintiff the name of the person(s) responsible for each category.  The first time Plaintiff learned that Defendants had any objection to the designated category was when Defendants filed their response to this motion.

Moreover, Defendants failed to timely respond to the Second Set of discovery requests, produced a so-called "Response" that is non-responsive in many respects, and failed to provide material information.  See Defendants' Response to Plaintiff's Second Set of Interrogatories (Ex. 21) and Defendants' Response to Plaintiff's Second Set of Request for Production of Documents. (Ex. 22)  By no means is this issue "moot."

Like most prison cases, much of the evidence in this case is in the possession of the Defendants.[1]  Plaintiff has a parole hearing in January 2019 and has a mandatory discharge date in December 2019.  As such, it is in Defendants' interest to continue to delay this case as long as possible in order to attempt to render it moot.[2]  So far they have been very successful in achieving this delay.  In the interest of justice, Plaintiff requests that this Court immediately compel the disclosure of all information requested and forthwith submit its witnesses to immediate deposition at a place and location determined by Plaintiff.

---

[1] Tellingly, Defendants have not served any discovery requests on the Plaintiff.
[2] In fact, Defendants have not even filed an Answer in this matter, despite that this lawsuit was filed over one year ago.

### A.   Failure to Fully Respond to Plaintiff's Subpoena.

Defendants' assertion that they did not understand the subpoena to request Plaintiff's "complete" file is belied by the fact that the subpoena itself orders them to produce Plaintiff's "complete" file.  See Exhibit 1, Doc. 67-1 (Subpoena states that defendants provide "a copy of the complete of the offender file of [Plaintiff]")[3]  Regardless, counsel for defendants agreed to produce the requested documents on May 25, 2018. Exhibit 6, Doc. 67-6.

Plaintiff has also made other formal requests for some of these documents, which have still not been answered.  For instance,

> Plaintiff's Second Set of Request for Production # 5 requested:
>
> All documents, including communications between and among Defendants, including those with the members of the Gender Dysphoria Management and Treatment Committee and any reports findings or conferences held by such committee, referring or pertaining to Ms. Saunders-Velez.

In response, Defendants' listed documents Bates 1792-2374.  But **none** of those documents relate to decisions made by the Gender Dysphoria Committee ("GDC").  In fact, Defendant has not identified any specific record that the GDC has reviewed with respect to the Plaintiff's placement.  Instead, Defendants responded inaccurately that the only request that they have received from Plaintiff about placement in the female facility occurred in January 2018. Defendants' own records show this is false, and that Plaintiff made this request in May 2017, when she was first placed in Defendants' custody.  See Ex. 23, Bates #CDOC/Saunders 00011, Entry dated 06/01/2017 ("Met with Saunders on 5/31/17 in response to a letter to the Warden with requests based on being transgender.  Referred to the Gender Dysphoria Committee to address.")

---

[3] Defendants omitted the word "complete" in its description of the subpoena.  Doc. # 73, p. 8.

Although Defendants state in their response that its counsel has a letter regarding a determination by the GDC from January 2018 (Doc. 73, p. 9), it has still not been provided to Plaintiff or her counsel.  In addition, Defendants have not provided any of the investigations conducted by the CDOC's Office of Inspector General ("OIG") regarding the sexual assaults on Plaintiff, her call records, or the numerous kites Plaintiff has submitted regarding her placement and care.

Clearly, Defendants have not made good faith efforts to locate responsive documents and have not even produced the responsive documents that have been located.  Defendants' continued statements that their counsel will supplement discovery at some future time is too little, too late.

**II.**     **Failure to Respond to Plaintiff's First, Second or Third Discovery Requests**

**A.  Plaintiff's First Discovery Request for the Identity of Other Witnesses**

This issue was fully briefed in Plaintiff's prior Motion for Expedited Discovery, Doc. Nos. 44 and 53.  Despite Defendants' attempt to argue that Plaintiff is seeking private medical information protected by HIPPA, this is a red herring.  As explained in Plaintiff's previous pleadings, Plaintiff is not seeking medical or mental health information.  Defendant is conflating the term "gender identity" with the medical diagnosis of "gender dysphoria" – two very different concepts.  Defendants routinely disclose to the public a person's gender identity on its online "inmate locator"– though they choose to inaccurately represent transgender people's gender identities online.  Gender dysphoria, on the other hand, is a medical condition.  Although it may be true that some transgender individuals have gender dysphoria, that is not true for all.  Just as some cisgender individuals have depression – some do not.  Plaintiff is not seeking any information about whether individuals have gender dysphoria.  Instead, Plaintiff seeks the identity

of other potential witnesses in this case who have been subjected to the same CDOC policies and practices at issue in this case. This evidence is relevant to Plaintiff's claim to show that in fact, certain practices are the well-established practices at CDOC – despite CDOC's denial to the contrary.

Although Defendants claim that this request is somehow "burdensome," they have not provided any evidence whatsoever of the nature of the "burden" that would be imposed. Dr. Darren Lish, the Chair of CDOC's Gender Dysphoria Committee, has previously testified that there are about 100 individuals in CDOC custody receiving hormone therapy and that he is the "point person" for all of them.[4] Ex. 24, p. 53, Deposition of Dr. Lish in *Radon v. Raemisch*. Presumably, it would be relatively easy for Defendants to obtain this information directly from Dr. Lish.

Defendants' proposal that they be allowed to contact these individuals to determine if they want to be disclosed to Plaintiff's counsel is not a tenable solution. That would be akin to telling an employer in a discrimination case that it does not have to disclose the name of employees who are potential witnesses, but rather could just disclose the identity of those who have agreed to speak to the Plaintiff. Any such arrangement would be extremely intimidating to the potential witness and pose an enormous impediment to the pursuit of truth. Given the 42 U.S.C. Section 1985 allegations in this case that the Plaintiff, as well as other witnesses, are being retaliated against for testifying against Defendants, or conversely given favorable treatment for discrediting the Plaintiff in this case, it is even more untenable to suggest that Defendants be allowed to contact potential witnesses on Plaintiff's behalf.

---

[4] Upon information and belief, there are 136 transgender women being held in CDOC's male facilities.

Defendants have not offered any credible reason why this information cannot be disclosed to Plaintiff's counsel on an "attorney's eyes only" basis to allow undersigned counsel to make contact with these women to determine if they are witnesses in this case.  Defendants have no privilege with these women.  Defendants know the identity of these women and are free to contact them at any time.  Undersigned counsel should have the same access to potential witnesses in this case.

### B.   Defendants' Failure to Respond to Plaintiff's Second Set of Discovery

1.  <u>Defendants did not "Respond" to the Second Interrogatory Request</u>

Defendants claim to have responded to the Second Set of Discovery requests on September 10, 2018, the same day Plaintiff filed her Motion to Compel.  It is correct that sometime that afternoon, Plaintiff received an email from defense counsel purporting to respond to these requests.  Undersigned counsel had already left the office by the time that email was received, and had already prepared the motion and provided it to her paralegal – and it was apparently filed a few hours later.

Regardless, Defendants have not responded to this discovery request.  First, as shown on Exhibit 21, Defendants only sent undersigned counsel an unsigned "response."  See Ex. 21, p. 20. Even assuming that at some point, Defendants will submit an actual response, the "affirmation" that appears on this "response" is not in compliance with the Federal Rules of Civil Procedure. Specifically, the unsigned affirmation on Defendants' response states:  "I hereby swear or affirm that the responses above are true based on the responses provided by the Department of Corrections" and has a blank signature line for "Teresa Reynolds."  This affirmation is nothing but a statement that these are the response that "Teresa Reynolds" got from the Department of

Corrections – it is not an affirmation as to the truth of the interrogatory responses, as required.

Fed. R. Civ. P. Rule 26(g) requires parties to certify that after reasonable inquiry, the answers are complete and correct. When a party fails to provide the proper certification, the Court, on motion or on its own, <u>must</u> impose an appropriate sanction on the party who failed to properly certify, including reasonable attorney fees. Fed.R.Civ.P. Rules 26(g)(1)(B) and 26(g)(3).

At a minimum, the appropriate sanction here is to strike all objections raised by Defendants in their responses and require them to fully and accurately respond to the discovery request as stated. Given the unnecessary amount of time undersigned counsel has spent pursuing this motion, a reasonable attorney fee award is also appropriate.

2. <u>Responses To Plaintiff's Second Set of Discovery Requests were Inadequate</u>

Assuming *arguendo* that Defendants' responses are timely, they are deficient in many respects. Of course, deficiencies can be addressed during depositions, but part of the purpose of serving discovery in advance of depositions is to narrow the disputed issues, determine who needs to be deposed, and allow the parties to question deponents in a meaningful manner. For purposes of this Reply, Plaintiff addresses the most serious failures in the Defendants' responses.

<u>Response to Interrogatory Number 2:</u>

This interrogatory requests that Defendants "identify all people who participated in housing decisions" related to the Plaintiff. Instead of answering this question, Defendants routinely qualified their responses by saying those involved in housing decisions "included" certain people, or certain people "initiated" or "authorized" these decisions. See Ex. 21, pps. 2-11. Some answers were even more vague – stating "multi-disciplinary staffing was held" and "after discussions with all involved parties," certain housing decisions were made. *Id.* at p. 3.

Often repeated is the phrase that "housing checks" were made to ensure Plaintiff was housed in accordance with CDOC guidelines.  These answers are meaningless and provide no guidance as to whom should be questioned about the important issue of whether Plaintiff was provided safe and secure housing in the CDOC, as relevant to her Eighth Amendment claim.

Response to Interrogatory Number 5 and Request for Production of Documents ("RFP") Number 10:

Interrogatory number 5 requires Defendants to identify every instance in which a transgender woman in CDOC custody has alleged that she has been a victim of sexual assault and RFP 10 requests the actual documents regarding the reports/finding by the Office of Inspector General ("OIG") regarding any investigations into these sexual assaults.[5]

In response to the interrogatory, Defendants' submitted a chart, Ex. 25, Bates CDOC/Saunders 000759-760.  Defendants did not identify who made this compilation or from what information it was derived.  Most importantly, however, this information is seriously deficient.  For instance, Plaintiff has made reports of three different sexual assaults while in CDOC custody – and none of them are reported on this chart.  See e.g., Ex. 26, Plaintiff's report of rape at CTCF on April 21, 2018, Bates CDOC 000182; Ex. 27, Plaintiff's medical records re report of sexual assault at CTCF on August 15, 2018.  Undersigned counsel has been informed by other women that they have reported sexual assaults that are not included in this chart.

Even more importantly, Defendants did not produce any of the OIG investigation documents related these sexual assaults.  Instead, Defendants cited to their interrogatory response,

---

[5] Plaintiff has already offered that Defendants may use an identifier for each person who has alleged an assault, so as to protect any privacy interest.

and listed Bates # CDOC 000752.  Ex. 28.  This document is a 2017 "Supervisor Schedule" and does not relate to the request.  Even assuming Defendants intended to refer to Ex. 25, that response did not answer the production request.  Defendants have not only failed to provide the OIG reports on these other matters, they even refuse to provide the OIG reports regarding the sexual assaults incidents involving the Plaintiff.

Interestingly, however, Defendants has provided those OIG reports to the media. Specifically, an internet media site called "Into" reported that Governor Hickenlooper's office provided the reporter with the investigative reports regarding the first two sexual assaults, finding no assaults had occurred.  Ex. 29, p.3, August 23, 2018 "Into" Article: "Trans Inmate Raped a Third Time After Judge Returns Her to Site of Assault."([Governor Hickenlooper] furnished a nine-page report, detailing an investigation into the first two reported rapes.")

Defendants did not state any objection to providing these documents – but just failed to do so, presumably relying on their previous responses labeling most of these assaults as "unfounded" or "unsubstantial."  But RFP #10 is just that – a request for the documents, not for a compilation prepared by some unknown person.  Plaintiff requests that Defendants be ordered to immediately prepare a complete list of reported assaults and produced all the documents related to any investigations into those reported assaults.

Response to Interrogatory #8:

This interrogatory requests that Defendants identify and provide the criminal history of each person who allegedly sexually assaulted Ms. Saunders.  Defendants' responses only identify two of the three perpetrators, and do not provide the criminal history for any of them, as requested.  Plaintiff request a full and complete answer to this question.

<u>Request for Production #1</u>:

Defendants were requested to produce all DOC emails and internal documents regarding Plaintiff.  Instead, Defendants objected, stating that the search they conducted contained too many responses and thus was too "burdensome."  Defendants made no attempt to contact undersigned counsel to determine possible search terms that could have narrowed the search.  Again, Defendants' statement in its response that it will "potentially attempt to conduct a more targeted, narrow search" (Ex. 22, p. 2) is just too little, too late.  All objections should be deemed waived by Defendants' untimely and nonresponsive answer.  Plaintiff requests that Defendants immediately produce the entire 25,386 responses to this search – and that they must do so with an index of the responsive documents so undersigned counsel's review of these documents will not be delayed.

**C.  Defendants' Failure to Respond to Plaintiff's Third Set of Discovery Requests**

Plaintiff has asked for the records related to Mario Castillon, a potential witness for Plaintiff who has been subjected to retaliation by DOC because of his assistance to Plaintiff in this case. Defendants appear to argue that Plaintiff does not have standing to bring such a claim – because any retaliation claim would only belong to Mr. Castillon, not Plaintiff.  That is not a correct statement of law.  In fact, a "party" in a lawsuit has standing to bring a Section 1985 claim for intimidation of a potential witness.  Ex. 30, *Spurgeon v. Sedgwick County*, 1988 U.S. Dist. LEXIS 17174, *14, (party has standing to bring claim based on intimidation of potential witness under Section 1985) citing *Chahal v. Paine Webber Inc.,* 725 F.2d 20, 24 (2d Cir. 1984).

Mr. Castillon has given Defendants a signed release for undersigned counsel to receive his records and there is absolutely no basis to deny this request.

10

## **CONCLUSION**

For all the reasons stated above, Plaintiff respectfully requests that this Court deny all of Defendants' objections, require Defendants to produce all requested documents within seven (7) days, immediately produce witnesses for depositions at a location to be determined by the Plaintiff, immediately file an ANSWER to this matter, and for attorney's fee and costs deemed reasonable by the court.

DATED this 28th day of September 2018.

Respectfully submitted,

*s/ Paula Greisen*
Paula Greisen
Meredith A. Munro
KING & GREISEN, LLP
1670 York Street
Denver, Colorado 80206
(303) 298-9878 telephone
greisen@kinggreisen.com
munro@kinggreisen.com


Lynly S. Egyes
Transgender Law Center
594 Dean Street, Suite 47
Brooklyn, NY  11238
(973) 454-6325 telephone
lynly@transgenderlawcenter.org


Shawn Thomas Meerkamper
Transgender Law Center
P.O. Box 70976
Oakland, CA  94612
(510) 587-9696
lynly@transgenderlawcenter.org
shawn@transgenderlawcenter.org


*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this  28th day of September 2018, I electronically filed the foregoing **REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Chris W. Alber
Colorado Department of Law
Civil Litigation and Employment Law Section
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 10th Floor
Denver, CO  80203
Chris.Alber@state.co.us

*Counsel for Defendants*

*s/Rick VanWie*