IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01654-MSK-NRN

LINDSEY ELIAS SAUNDERS-VELEZ,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS (CDOC),
TRAVIS TRANI, in his official capacity as Director of Prisons,
MIKE ROMERO, in his official capacity as Colorado Territorial Correctional Facility Warden,
RICK RAEMISCH, in his official capacity as Executive Director of Colorado Department of Corrections,
RYAN LONG, in his official capacity as Denver Reception and Diagnostic Center Warden,
KELLIE WASKO, in her official capacity as Deputy Executive Director of Colorado Department of Corrections,
DENVER RECEPTION AND DIAGNOSTIC CENTER (DRDC), and
THE COLORADO TERRITORIAL CORRECTIONAL FACILITY (CTCF),

Defendants.

## DEFENDANTS' EMEREGENCY MOTION PURSUANT TO FED. R. CIV. P. 35 TO COMPEL INDEPENDENT MEDICAL EXAMINATION

Defendants, through the Colorado Attorney General, hereby submit the following Emergency Motion Pursuant to Fed. R. Civ. P. 35 to Compel Independent Medical Examination. In support therefore, Defendants state as follows:

### STATEMENT REGARDING CONFERRAL

Pursuant to Local Rule 7.1, Defendants have conferred with Plaintiff's counsel regarding the relief requested in this motion. Plaintiff opposes the relief requested in this motion.

## STATEMENT REGARDING NEED FOR EMERGENCY RESOLUTION

As discussed below, Defendants are seeking an Independent Medical Evaluation (IME) of Plaintiff pursuant to Fed. R. Civ. P. 35, and have issued a notice for the same for January 8, 2019. Defendants' rebuttal expert, Renee Sorrentino, M.D., needs to conduct an evaluation of Plaintiff in order to prepare her report, which must be disclosed in connection with Defendants' rebuttal expert disclosures by January 11, 2019. Dr. Sorrentino resides in Massachusetts and must fly to Denver for the evaluation. Her availability is limited, but she can conduct the evaluation January 3, 2019 or January 8, 2019. In light of the dispute between the parties, Defendants have issued a notice for the later date, January 8, 2019. Defendants therefore need resolution of the request for an IME on an expedited basis.

## NATURE OF THE CASE

Plaintiff is a transgendered offender currently incarcerated within the Colorado Department of Corrections (CDOC) who has brought claims against Defendants for alleged violations of her rights under the Fourth and Eighth Amendments and, pursuant to the most recent amendment of the complaint, a conspiracy claim under 42 U.S.C. § 1985(2) against Defendant Romero. Doc. 95. Plaintiff seeks injunctive relief, declaratory judgment, and monetary damages. *Id*. at 24-25.

The parties are currently engaged in discovery. With the prior mutual agreement of the parties, discovery will close on January 31, 2019, and dispositive motions will be due February 28, 2019. Docs. 62 and 64. Pursuant to the Order of the Court on December 19, 2018, the rebuttal expert witness deadline is January 11, 2019. Doc. 110. Defendants are working

diligently to prepared rebuttal expert witness disclosures by the January 11, 2019 deadline for the same.

Defendants have secured a licensed psychiatrist with experience and expertise in gender dysphoria as a rebuttal expert in this case, Dr. Renee Sorrentino, MD. *See* Curriculum Vitae for Dr. Sorrentino, attached hereto as Exhibit A-1.[1] This expert has already begun work in preparing an expert witness report - however, Dr. Sorrentino has indicated that in order to properly evaluate Plaintiff's claims in this case, and to respond to the opinions set forth in Plaintiff's affirmative expert disclosures, Dr. Sorrentino needs an opportunity to evaluate Plaintiff. In fact, this is a standard protocol for rendering an expert opinion in a matter such as this. Defendants therefore attempted to secure a stipulation from Plaintiff for such an IME, as is the normal practice. However, Plaintiff will not enter into such a stipulation and opposes this motion. Therefore, pursuant to Fed. R. Civ. P. 35, Defendants request that the Court order Plaintiff to submit to an IME to be conducted by Dr. Sorrentino at the correctional facility where Plaintiff is incarcerated on January 8, 2019.[2] In addition, if an IME is ordered of Plaintiff and she is not cooperative with Defendants' expert, a follow-up psychological examination by a forensic psychologist may also be necessary.

---

[1] Dr. Sorrentino has been retained even though the only CV Defendants' currently have in their possession is a CV that has a watermark that states "non-retained."

[2] Defendants originally requested additional time for Dr. Joseph Penn to submit his rebuttal expert report because of a number of reasons, including the fact that Dr. Penn was in the process of dealing with two tragic family health matters. On December 19, 2018, the Magistrate Judge granted Defendants' request for an extension, but only until January 11, 2019. When notified of the same, Dr. Penn indicated that due to his family circumstances, he would not be able to provide an expert report by that deadline. Defendants tirelessly worked to identify a substitute, and have done so, in Dr. Sorrentino.

As required by the rule, Defendants have prepared a notice setting forth the proposed time, place, manner, conditions, and scope of the examination by Dr. Sorrentino. *See* Exhibit A-2, attached hereto. The Court should order that the IME be permitted under Rule 35 because Plaintiff has placed her mental and physical condition in controversy, and the request for the IME is supported by good cause, as set forth below.[3]

**ARGUMENT**

I.  **The Court should order an IME pursuant to Fed. R. Civ. P. 35 because Plaintiff has placed her mental condition in controversy and there is good cause for an IME.**

Fed. R. Civ. P. 35 sets forth that a party may request that another party submit to an IME by a suitably licensed or certified examiner when that party's physical or mental condition in is controversy. This is usually accomplished by the stipulation of the parties, but if such a stipulation cannot be obtained, the party seeking the IME may request that the Court order an IME. *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 689 (10th Cir. 2007) ("Notwithstanding Rule 35's requirements, however, 'physical and mental examinations are usually arranged by stipulation of the attorneys, with the rule standing as a compulsory sanction that helps to produce stipulations.'") (citing 8A Charles Alan Wright, Miller & Marcus, *Federal Practice and Procedure* § 2234 (2d ed.1994)).

Specifically, Rule 35 provides in relevant part, "[w]hen the mental or physical condition (including the blood group) of a party, . . . is in controversy, the court in which the action is

---

[3] Likewise, if Plaintiff is not sufficiently cooperative with Defendants' expert during the IME, a follow-up psychological evaluation by a forensic psychologist may also be necessary. Defendants are working to make arrangements for such an expert currently, in the event that this becomes necessary as well.

pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a). Rule 35(a) further states that "[t]he order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made. *Id.*; *Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998). As indicated above, Defendants have prepared and served such a notice. *See* Exhibit A-2.

### A. Plaintiff has placed her mental and physical condition in controversy.

Plaintiff has placed her mental and physical condition directly into controversy in this case. Plaintiff alleges that she suffers from gender dysphoria, a psychiatric condition for which Plaintiff alleges she has not been provided adequate medical care or treatment, in a variety of ways. Doc. 95 at ¶¶ 30-35, 65-66, 92-98. Plaintiff alleges that this has placed her at physical risk within the male prisons, and has caused her psychological distress resulting in self-harm. On November 15, 2018, Plaintiff disclosed two affirmative expert witnesses who have offered opinions regarding Plaintiff's gender dysphoria and the mental health care and treatment provided to her by the CDOC. Plaintiff's expert opined in this report that Plaintiff needs sex reassignment surgery, among other opinions regarding Plaintiff's gender dysphoria and the handling of this condition within the CDOC.[4] Plaintiff's mental condition is thus clearly in controversy in this matter, and in fact goes to the heart of the claims in this case.

---

[4] This is the first time that this issue was injected into this case, as this is not an issue raised in any of the complaints filed in this action. This new issue is significant and has required Defendants to explore outside rebuttal experts to address this matter, among others.

**B. There is good cause to permit an IME under Rule 35.**

In addition to the fact that Plaintiff has placed her mental and physical condition directly in controversy, there is good cause to permit an IME under Rule 35. "The determination of good cause is closely related to a finding that a party's physical or mental condition is in controversy, and good cause may exist when a plaintiff alleges to have suffered injuries that a lay person may not be able to properly evaluate. *Weddle v. Farmers Ins. Co., Inc.,* 11-CV-0095-CVE-FHM, 2011 WL 5439200, at *2 (N.D. Okla. Nov. 9, 2011) (*Greenhorn v. Marriot Int'l, Inc.,* 216 F.R.D. 649, 652 (D. Kan. 2003)); *See also*, *Simpson v. Univ. of Colorado*, 220 F.R.D. 354, 362–63 (D. Colo. 2004) (citing *Fischer v. Coastal Towing Inc.,* 168 F.R.D. 199, 201 (E.D. Tex. 1996) (without an independent examination to rebut the reports of plaintiff's expert, defendant has no way to adequately scrutinize the conclusions of plaintiff's expert); *Eckman v. University of Rhode Island,* 160 F.R.D. 431, 434 (D.R.I. 1995) (defendants established good cause for Rule 35 examination where plaintiff intended to prove severe mental injury by offering expert testimony from two therapists; held that defendants "obviously have substantial questions concerning the extent of plaintiff's emotional injuries and causation therefor")).

Here, as noted, Plaintiff has placed her mental and physical health directly at issue in this case and Plaintiff seeks injunctive relief and declaratory judgment directly impacting the CDOC's handling of her gender dysphoria. It is therefore vital to Defendants' defenses that Defendants' expert be given an opportunity to evaluate Plaintiff, particularly since gender dysphoria and the proper care for this condition in a correctional environmental are issues that lay individuals are generally not able to properly evaluate without insight from experts. *See Weddle*, 2011 WL 5439200 at *2.

Indeed, Plaintiff has disclosed two expert witnesses who have opined regarding Plaintiff's gender dysphoria and the handling of the same. One of these experts conducted an in person evaluation of Plaintiff for approximately three hours, nine business days before Plaintiff submitted her report on November 15, 2018, for the "purpose of mental health and [gender dysphoria] assessment and recommendations." *See* Exhibit A-3, at p. 1. For the first time, among other assertions made by this particular expert, Plaintiff's expert contends that Plaintiff needs sex reassignment surgery as a result of her gender dysphoria. *See id*. at p. 9. However, this opinion, among others in the report, is highly questionable, not the least of which because Plaintiff has also been diagnosed with a co-morbid psychiatric disorder known as Borderline Personality Disorder. Defendants' expert is expected to offer rebuttal opinions explaining the interplay between Plaintiff's gender dysphoria disorder and Borderline Personality Disorder, and needs an opportunity to meet with Plaintiff in order to evaluate her, in order to properly do so. *Schlunt v. Verizon Directories Sales-West, Inc.*, 2006 WL 1643727, *2 (M.D. Fl. 2006) (good cause for an IME may exist when there is a dispute as to the cause of a plaintiff's injuries).

Defendants are asking that their expert be given a reciprocal opportunity to examine Plaintiff and form opinions informed by such an evaluation, just as one of Plaintiff's expert did several days before she submitted her report. This is a common-place and normal occurrence during discovery, such that arrangements for an IME are usually stipulated to by the parties. *See Herrera,* 474 F.3d at 689. Defendants' expert needs a fair, mutual opportunity to evaluate Plaintiff so as to prepare a rebuttal report, and has explained that a personal evaluation of Plaintiff is critical to her ability to provide opinions in this matter. In such instances, where the plaintiff's physical or mental condition is in controversy and an IME is necessary to the

defendants' ability to present a defense, good cause exists to warrant an IME under Rule 35. *Weddle v. Farmers Ins. Co., Inc.*, *supra*.

This is especially important in this matter, given that Plaintiff seeks equitable relief from the Court that would require the federal court to intervene in the management of a state prison. The law is well-established that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g.*, *Meachum v. Fano*, 427 U.S. 215 (1976). Courts should grant injunctive relief involving the management of prisons only under *exceptional* and *compelling* circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 269-70 n.2 (4th Cir. 1994); *see also Citizens Concerned for Separation of Church & State v. Denver*, 628 F.2d 1289, 1299 (10th Cir. 1980). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary in the maintenance of proper federal-state relations." *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (quotation omitted). As such, "intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts . . . . *Taylor*, 34 F.3d at 269 (citations omitted). These principles of state sovereignty and the separation of powers further support that there is good cause for Defendants to be permitted a fair opportunity to obtain the evidence they need in their defense, so as to provide the Court with a complete understanding of the handling of Plaintiff's mental health and her claimed damages.

### C. Plaintiff's objections to the request are not valid bases upon which to deny Defendants an IME.

Plaintiff opposes the relief requested in this motion on the grounds that Plaintiff objects to the extension of the rebuttal expert witness deadline, and so therefore no IME should be permitted; Plaintiff feels that because Plaintiff is incarcerated, Defendants have already had opportunities to evaluate Plaintiff; and because counsel does not feel she has adequate time to meet with her client in advance of the proposed evaluation. However, none of these objections address the issue as to whether Plaintiff has placed her mental condition into controversy, which is clearly the case in this matter. In addition, none of these objections overcome the good cause for the requested IME provided by Defendants.

With regard to Plaintiff's objection to an IME because she objects to the extension of the rebuttal expert witness deadline ordered by this Court on December 19, 2019 (Doc. 110), while Defendants appreciate Plaintiff's objection, at this time, the Court's order granting an extension of the rebuttal expert witness deadline to January 11, 2019, stands. *Regardless*, however, Defendants are entitled to an IME independent of the rebuttal expert witness deadline, because even if the expert witness deadline were not extended, an IME by a consulting expert would still be appropriate to obtain information useful to cross-examining Plaintiff's experts. Nevertheless, Defendants are working to prepare their rebuttal expert witness disclosures in accordance with this valid order of the Court, and require an IME in order to complete this task. Accordingly, this objection does not defeat the good cause shown by Defendants for an IME.

With regard to Defendants' purported opportunities to evaluate Plaintiff, none of the named Defendants are themselves mental health experts, nor are they or CDOC mental health staff forensic specialists, as is Dr. Sorrentino. Defendants' expert, Dr. Sorrentino, has advised

that she needs to have the opportunity to personally evaluate Plaintiff. Defendants' expert has never had the opportunity to do so previously, and Defendants need to have Plaintiff undergo an IME by Dr. Sorrentino so that Defendants can evaluate and respond to the opinions expressed by Plaintiff's experts, which were disclosed on November 15, 2018. Again, this is a commonplace, standard practice. Plaintiff's objection is essentially that since Plaintiff is incarcerated and receiving mental health care through the CDOC, Defendants should not be permitted to conduct an IME. However, Defendants are not aware of any authority for Plaintiff's position that they should not be permitted to conduct an IME simply because Plaintiff has previously been in custody and provided with medical and mental health care during her incarceration.

As to Plaintiff's objection that she does not have sufficient time to meet with Plaintiff to prepare her for an IME prior to January 8, 2019, an IME is not testimonial in nature and there should be no reason for an attorney to need to "prepare" a plaintiff for the same. *See, e.g.*, See *Dodd-Anderson v. Stevens*, 1993 WL 273373 (D. Kan. 1993) (attorneys do not have a right to be present at Rule 35 examinations); *Simpson v. Univ. of Colorado*, 220 F.R.D. at 363 (a Rule 35 exam is part of the truth-seeking process and not adversarial or partisan) (citing *Warrick v. Brode,* 46 F.R.D. 427, 428 (D. Del. 1969)). Further, currently four separate attorneys have filed appearances on the part of Plaintiff. Two other attorneys have recently corresponded with the CDOC indicating that they too represent the Plaintiff. At least four of these attorneys appear to work and reside in Colorado. To the extent that Plaintiff's counsel needs to communicate with Plaintiff prior to her IME on January 8, 2019, one of these attorneys should be able to do so via telephone or in person. Plaintiff's counsel's desire to prepare Plaintiff for her IME does not

outweigh the good cause to order the same under Rule 35, when weighed against the importance of such an examination to the defense.

## CONCLUSION

For the reasons set forth herein, Defendants have shown that Plaintiff's mental and physical condition are in controversy, and there is good cause for an IME pursuant to Fed. R. Civ. P. 35.

Respectfully submitted this 31st day of December, 2018.

                         CYNTHIA H. COFFMAN
                         Attorney General

                         *s/ Jack D. Patten, III*
                         CHRIS W. ALBER
                         Senior Assistant Attorney General
                         JACK D. PATTEN, III
                         Senior Assistant Attorney General
                         Colorado Department of Law
                         Civil Litigation and Employment Law Section
                         Ralph L. Carr Colorado Judicial Center
                         1300 Broadway, 10th Floor
                         Denver, Colorado 80203
                         Telephone: (720) 508-6612 or 6592
                         Facsimile: (720) 508-6032
                         Email: chris.alber@coag.gov
                                   jack.patten@coag.gov

CERTIFICATE OF SERVICE

I certify that on this 31st day of December, 2018 I electronically filed the foregoing EMEREGENCY MOTION PURSUANT TO FED.R.CIV.P. 35 TO COMPEL INDEPENDENT MEDICAL EXAMINATION with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Paula Greisen
Meredith A. Munro
King & Greisen, LLP
1670 York Street
Denver, CO 80206
greisen@kinggreisen.com
munro@kinggreisen.com

Lynly Egyes
Transgender Law Center-Brooklyn
594 Dean Street, Suit 47
Brooklyn, NY 11238
lynly@transgenderlawcenter.org

Shawn Thomas Meerkamper
Transgender Law Center
P.O. Box 70976
Oakland, CA 94621
shawn@transgenerlawcenter.org

*Counsel for Plaintiff*

*Courtesy Copy To*:
Adrienne Jacobson, CDOC

*s/ Laurie A. Merrick*